Filed 3/29/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| TERRY QUARRY et al., | ) | |
| | ) | |
| Plaintiffs and Appellants, | ) | |
| | ) | S171382 |
| v. | ) | |
| | ) | Ct.App. 1/4 A120048 |
| DOE I, | ) | |
| | ) | Alameda County |
| Defendant and Respondent. | ) | Super. Ct. No. HG07313640 |
| _____ | ) | |

Plaintiffs brought an action against the Roman Catholic Bishop of Oakland, alleging that defendant bore responsibility for sexual abuse committed during the 1970's by a priest then assigned to the Oakland diocese. Plaintiffs allege that in 2006 they discovered for the first time that the cause of their adult psychological injuries was the sexual abuse inflicted by this priest when they were children. It is our task to determine whether their claims are timely within the limitations period established by Code of Civil Procedure section 340.1.[1]

Section 340.1 governs the period within which a plaintiff must bring a tort claim based upon childhood sexual abuse. The statute must be understood in an

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

historical context. Over the years, the limitations period for claims alleging sexual abuse against children continually was expanded as to actions that were brought against those persons who were the direct perpetrators of the sexual abuse. Moreover, in 1990 the Legislature elected to specify that such causes of action against direct perpetrators could be brought within eight years of majority or within three years of the time the plaintiff discovered that psychological injury was caused by childhood abuse. It was only in 1998, however, that the statute was amended to include third party defendants within its purview, and as to such defendants the Legislature elected not to embrace the open-ended discovery provision past the plaintiff's 26th birthday. On the contrary, drawing a clear distinction between direct perpetrators and third party defendants, in 1998 the Legislature provided that claims against third party defendants must be brought prior to the plaintiff's 26th birthday. The claims of plaintiffs in the present case clearly were lapsed by 1998, because by that date plaintiffs all had passed their 26th birthdays.

In a 2002 amendment, the Legislature removed the strict age 26 cutoff for claims against a subcategory of third party defendants. Pursuant to the 2002 amendment, this subcategory of responsible third party defendants was swept within the provision that previously governed claims against actual perpetrators, meaning that even after the plaintiff reached the age of 26, a cause of action against these third party defendants could be brought within three years after the plaintiff discovered his or her psychological injury was caused by childhood abuse.

But what of causes of action against the subcategory of third party defendants that already had lapsed under the law as it existed in 1998? As we shall explain, in our view a specific subdivision added by the 2002 amendment provides the sole basis for the revival of such lapsed claims. Because plaintiffs

2

did not bring their action within the one-year revival period prescribed by the 2002 amendment, their claims are barred. Our conclusion rests upon three points: The 1998 amendment under which claims against persons or entities other than the direct perpetrator of the abuse[2] could not be brought once a plaintiff reached the age of 26; the usual rule of construction that lapsed claims are not considered revived without express legislative language of revival; and the express — but limited — language of revival contained in the 2002 amendment to section 340.1.

For the reasons discussed below, the judgment of the Court of Appeal is reversed.

## I. FACTS

Plaintiffs are six brothers born respectively in 1957, 1958, 1959 (twins), 1962, and 1963. Their ages ranged from 43 to 49 when they filed suit. Defendant is the Roman Catholic Bishop of Oakland.[3] In a complaint filed in March 2007 and amended in July 2007, plaintiffs alleged they suffered injury as adults as a consequence of sexual abuse by a Catholic priest in the 1970's. In their first amended complaint, plaintiffs alleged that they were members of the St. Joachim parish in Hayward in 1972 and 1973, during the period Father Donald Broderson was an associate pastor of the parish. The complaint alleged that Father Broderson, who is not a defendant in this action, "sexually abused and molested the altar boys at St. Joachim's parish . . . by grabbing, fondling, kissing on the mouth, and engaging in other inappropriate sexual conduct with the boys,

---

[2]     We refer to defendants who were not the direct perpetrator of the abuse as third party defendants and to claims against such defendants as third party claims.

[3]     In accord with privacy requirements as stated in subdivision (m) of section 340.1, the amended complaint referred to defendant as Doe I. We identify defendant as the Bishop because the Court of Appeal so identified that party, and defendant has used that nomenclature in this court.

3

including Plaintiffs . . . . Fr. Broderson sexually abused each of the Plaintiffs in 1972 and/or 1973, while he was assigned as an associate pastor at St. Joachim's parish."

The complaint alleged that defendant should be held responsible for Father Broderson's actions because the priest was "under its direct supervision, employ and control." The complaint named additional Doe defendants, alleging that persons belonging to the diocese, knowing or having reason to know that Father Broderson had committed unlawful sexual conduct in the past, failed to execute their duty to take reasonable steps to avoid future acts of unlawful sexual conduct on the part of Father Broderson, including by preventing him from working in contact with children.

The complaint alleged that plaintiffs did not discover until 2006 that the sexual abuse was the cause of their adult psychological problems. In support, the complaint alleges that the sexual abuse resulting from defendant's alleged breach of duty caused psychological damage to plaintiffs, damage that rendered them unable to recognize either as children or well into adulthood the wrongfulness of Father Broderson's actions and the causal connection between the abuse and the emotional and psychological damage they suffered throughout their lives. Specifically, "[plaintiffs] did not discover, and reasonably could not discover, the wrongfulness of Father Broderson's conduct until the second half of the 2005 calendar year, when Father Broderson was deposed in connection with a civil lawsuit, admitted to sexually abusing Plaintiffs, and Plaintiffs were contacted by an attorney representing other victims of Father Broderson. Plaintiff[s] . . . did not discover, and could not reasonably have discovered that injuries occurring during [their] adulthood were caused by the molestation at the hands of Fr. Broderson, until on or after March 6, 2006, when Plaintiff[s] met with a mental health practitioner. As a result, within the one calendar year preceding the filing of this

4

action, Plaintiff[s] . . . discovered that the psychological injury occurring after the age of majority was caused by the sexual abuse."

The first amended complaint alleged 14 causes of action, primarily including claims for negligence in hiring, retaining, and supervising Father Broderson despite knowledge of his prior acts of sexual abuse, and negligent failure to protect plaintiffs or warn them of their peril.

The trial court sustained defendant's demurrer to the first amended complaint without leave to amend on the ground that the limitations period established by section 340.1 barred the action, and the action was not revived by the 2002 amendment to that provision. The court entered judgment dismissing the complaint with prejudice.

The Court of Appeal reversed, agreeing with plaintiffs that, pursuant to the 2002 amendment to section 340.1 "their claims did not even begin to run until 2006, when they first discovered their 'psychological injury or illness occurring after the age of majority was caused by the sexual abuse.' "

This court granted defendant's petition for review. "Because this appeal arises from a judgment of dismissal following the sustaining of demurrers without leave to amend, we ' "give[] the complaint a reasonable interpretation, and treat[] the demurrer as admitting all material facts properly pleaded." ' [Citations.]" (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543.)

## II. DISCUSSION
### A. Prospective and Retrospective Application of Enlarged Limitations Periods

Before we analyze the application of section 340.1 to plaintiffs' case, we must consult the general rules concerning the application of enlarged limitations periods to claims involving conduct that occurred prior to the enlarging amendment.

5

The Legislature has authority to establish — and to enlarge — limitations periods. As we shall explain, however, legislative enlargement of a limitations period does not revive *lapsed* claims in the absence of express language of revival. This rule of construction grows out of an understanding of the difference between prospective and retroactive application of statutes.

Our decisions have recognized that statutes ordinarily are interpreted as operating prospectively in the absence of a clear indication of a contrary legislative intent. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230 (*Disability Rights*); *DiGenova v. State Board of Education* (*DiGenova*) (1962) 57 Cal.2d 167, 174; see also § 3 ["No part of [this code] is retroactive, unless expressly so declared"].) In construing statutes, there is a presumption against retroactive application unless the Legislature plainly has directed otherwise by means of " 'express language of retroactivity *or . . .* other sources [that] provide a clear and unavoidable implication that the Legislature intended retroactive application.' " (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475 (*McClung*); see also *Disability Rights*, *supra*, at p. 230; *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841 (*Philip Morris*).) Ambiguous statutory language will not suffice to dispel the presumption against retroactivity; rather " 'a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective.' " (*Philip Morris*, *supra*, at p. 841; see *id.* at p. 843; see also *Disability Rights*, *supra*, at pp. 229-230; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209, fn. 13.)

The terms "retroactive" and "prospective," however, are not always easy to apply to a given statute. (See *Disability Rights*, *supra*, 39 Cal.4th at pp. 230-231.) We must consider " ' "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past

6

event" [citation].  In exercising this judgment, "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." [Citation.]'  [Citation.]"  (*In re E.J.* (2010) 47 Cal.4th 1258, 1273.)

In general, a law has a retroactive effect when it functions to " ' "change[] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct" ' " that is, when it " ' "substantially affect[s] existing rights and obligations[.]" ' " (*Disability Rights*, *supra*, 39 Cal.4th at p. 231; see also *In re E.J.*, *supra*, 47 Cal.4th at p. 1273 [" 'In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date' "].)  Ordinarily, considerations of basic fairness militate against such retroactive changes.  (*McClung, supra*, 34 Cal.4th at p. 475; *Philip Morris*, *supra*, 28 Cal.4th at pp. 840-842.)

Changes to the law, however, are not necessarily considered retroactive even if their application "involve[s] the evaluation of civil or criminal conduct occurring before enactment." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 936.)  In a principle of significance to the present case, changes to rules governing *pending litigation*, for example, frequently have been designated as prospective, because they affect the future; that is, the future proceedings in a trial.  The prospective label applies even though the trial concerns conduct that occurred prior to the enactment of the new law.  (*Id*. at pp. 936-937; see also *Disability Rights*, *supra*, 39 Cal.4th at pp. 231-232.)

Enlargement of the statutory period in which civil actions may be brought constitutes a special category within the general topic of the prospective or retroactive application of statutes.  An extensive line of authority on this subject has developed and we assume that the Legislature was mindful of such existing law when it enacted legislation.  (See, e.g., *Estate of McDill* (1975) 14 Cal.3d 831,

7

839; see also *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 221.)

As long as the former limitations period has not expired, an enlarged limitations period ordinarily applies and is said to apply prospectively to govern cases that are pending when, or instituted after, the enactment took effect. This is true even though the underlying conduct that is the subject of the litigation occurred prior to the new enactment. (See *Douglas Aircraft Co. v. Cranston* (1962) 58 Cal.2d 462, 465 (*Douglas Aircraft*); *Mudd v. McColgan* (1947) 30 Cal.2d 463, 468 (*Mudd*).)

For example, in *Society of Cal. Pioneers v. Baker* (1996) 43 Cal.App.4th 774, 784-785, a case involving a damage claim arising from the misappropriation of a work of art, the court held that because the prior three-year limitations period had not expired by the time the statute was amended, it was proper to apply an enlarged limitations period that added a delayed accrual provision to permit the plaintiff's damage claim to go forward. (See also *Mojica v. 4311 Wilshire, LLC* (2005) 131 Cal.App.4th 1069, 1072-1073 [enlargement of the period in which to bring personal injury claim applied to a claim that had not lapsed for state law purposes because, prior to the amendment's effective date, the plaintiff filed an action in federal court]; *Andonagui v. May Department Stores Company* (2005) 128 Cal.App.4th 435, 439-440 (*Andonagui*) [examining a 2002 enactment extending the limitations period from one year to two years for personal injury actions, and concluding the new law applied because the plaintiff's claim had not lapsed].)

However, when it comes to applying amendments that enlarge the limitations period to claims as to which the limitations period has expired before the amendment became law — that is, claims that *have lapsed* — the analysis is different. Once a claim has lapsed (under the formerly applicable statute of

8

limitations), revival of the claim is seen as a retroactive application of the law under an enlarged statute of limitations. Lapsed claims will not be considered revived without express language of revival. (*Douglas Aircraft*, *supra*, 58 Cal.2d at p. 465 [" 'It has been held that unless the statute expressly provides to the contrary any such enlargement applies to matters pending but not already barred' "]; see also 58 Cal.Jur.3d (2004 ed.) Statutes, § 38, pp. 418-419 [amendments that enlarge a limitations period ordinarily do not apply "where the claim was not properly made within the statutory time limit . . . and thus expired prior to the change"].)

For example, in *Douglas Aircraft*, *supra*, 58 Cal.2d 462, Douglas Aircraft sought a declaratory judgment to determine whether it had a duty to remit to the State Controller certain unclaimed wages that had been earned by its employees. It needed the judgment to determine whether the wages, as to which the claims limitation period had lapsed, nonetheless were subject to a new statute providing that the statute of limitations would not be a defense to the duty to remit unclaimed property to the State Controller. Because the former limitations period had run before the effective date of the new statute, we found the new statute inapplicable to Douglas Aircraft. We explained that "until the statute of limitations has run it may be extended, whereas after it has run, [defendants] may rely upon it in conducting their affairs." (*Id*. at p. 465; see also *Mudd*, *supra*, 30 Cal.2d at p. 468.) Another example is found in *Moore v. State Bd. of Control* (2003) 112 Cal.App.4th 371, 378-379 (*Moore*), in which a claim upon a crime victim's restitution fund had lapsed and was not revived by a *subsequently* enlarged limitations period, because the new enactment contained no "clear indication" of legislative intent to revive lapsed claims. The reviewing court commented that "when the Legislature intends to revive time-barred claims it does so expressly." (*Id*. at p. 379; see also *In re David A. v. Superior Court* (1993) 20

9

Cal.App.4th 281, 286-287 (*David A.*) [interpreting former § 340.1, as amended by Stats. 1990, ch. 1578, § 1, pp. 7550-7552, and pointing out that lapsed claims are not revived in the absence of express language of revival]; *Gallo v. Superior Court* (1988) 200 Cal.App.3d 1375, 1378 (*Gallo*) [in the absence of express language of retroactivity, the enlargement of the period in which to sue for damages arising from commission of a felony does not revive claims that had "already expired" under prior law]; *id.* at pp. 1379, 1383; *Krupnick v. Duke Energy Morro Bay* (2004) 115 Cal.App.4th 1026, 1028-1029 (*Krupnick*) [an enlargement of the limitations period for personal injury actions did not apply, because the prior period had lapsed, and the amendment's express revival clause for one class of plaintiffs did not encompass the plaintiff's class]; *Maldonado v. Harris* (9th Cir. 2004) 370 F.3d 945, 955 [same; "Under California law, an extension of a statute of limitations will not apply to claims already barred under the prior statute of limitations unless the Legislature explicitly provides otherwise"].)

The rule is based upon the defendant's interest in repose. "The reason for this rule is a judicial perception of unfairness in reviving a cause after the prospective defendant has assumed its expiration and has conducted his affairs accordingly." (*Gallo*, *supra*, 200 Cal.App.3d at p. 1378.) As one court commented, "a statute of limitations grants prospective defendants relief from the burdens of indefinite exposure to stale claims. By reviving lapsed claims, the Legislature may appear to renege on this promise. As Judge Hand wrote, there may be something 'unfair and dishonest' in after-the-fact withdrawal of this legislative assurance of safety." (*David A.*, *supra*, 20 Cal.App.4th at p. 285.) Individuals, as well as businesses and other enterprises ordinarily rely upon the running of the limitations period: "The keeping of records, the maintenance of reserves, and the commitment of funds may all be affected by such reliance . . . . To defeat such reliance . . . deprives [enterprises] of the ability to plan intelligently

10

with respect to stale and apparently abandoned claims." (*Douglas Aircraft*, *supra*, 58 Cal.2d at pp. 465-466.) It is for this reason that we have expressed confidence that "the Legislature would have expressed itself in unmistakable terms had it rejected the established rules governing the interpretation of statutes of limitations." (*Id*. at p. 466.)

Plaintiffs contend that, notwithstanding the *Douglas Aircraft* decision, the modern view is that a statute may be applied retroactively if statutory terms merely suggest or imply retroactivity, or if legislative history or the overall context of the statute suggest a retroactive application was intended. The decisions of this court plaintiffs cite in support do not concern revival of lapsed claims. Contrary to plaintiffs' claim that *People v. Frazer* (1999) 21 Cal.4th 737 (overruled by *Stogner v. California* (2003) 539 U.S. 607) concerned whether a lapsed claim may be revived in the absence of express or unmistakable language of revival, in that case there *was* express language of revival (see *People v. Frazer*, *supra*, 21 Cal.4th at p. 747) and we were required to decide whether this provision constituted a violation of ex post facto principles or of due process. Plaintiffs have not referred us to a decision by this court that consulted extrinsic sources or found a claim revived in the absence of express language of revival.

Indeed, even the decisions plaintiffs claim are closely analogous afford scant support for their apparent view that a lapsed claim may be revived by ambiguous language or reliance upon legislative history materials. For example, in *Philip Morris*, *supra*, 28 Cal.4th 828, in rejecting the claim that the repeal of statutory immunity for products liability based upon exposure to tobacco was retroactive to the immunity period, we observed that the "time-honored presumption against retroactive application of a statute . . . would be meaningless if the vague phrases relied upon by plaintiff and the dissent were considered sufficient to satisfy the test of a 'clear[] manifest[ation]' [citation] or an

11

' " ' "unequivocal and inflexible" ' " ' assertion [citation] of . . . retroactivity."
(*Id*. at p. 843.) We continued: "Although we agree with the dissent that 'no talismanic word or phrase is required to establish retroactivity' [citation], we do not agree there is language in the Repeal Statute of the unequivocal and inflexible statement of retroactivity that [is] require[d]." (*Ibid*.; see also *McClung*, *supra*, 34 Cal.4th 467 [holding that a statute imposing personal liability on nonsupervisory workers for harassment of coworkers would not apply retroactively to conduct occurring prior to the enactment, and noting the potential constitutional implications of a contrary view; although we responded to the plaintiff's claim based upon legislative history materials, we did not suggest that legislative history materials alone, in the absence of supporting statutory language, would establish retroactivity].)

Plaintiffs assert that in practice, courts have examined various materials apart from express language of retroactivity to determine whether a lapsed claim has been revived. They rely upon *Krupnick*, *supra*, 115 Cal.App.4th 1026. In that case, the plaintiff contended that an extension of the limitations period for personal injury should apply to revive his lapsed claim. The Court of Appeal disagreed. It did not cite the *DouglasAircraft* decision, but relied on its principle: " '[A]s a rule of statutory construction, it is established that an enlargement of the limitations operates prospectively unless the statute expressly provides otherwise.' " (*Krupnick*, *supra*, 115 Cal.App.4th at p. 1029, quoting *Gallo*, *supra*, 200 CalApp.3d at p. 1378.) The *Krupnick* court added that, contrary to the plaintiff's claim that the expansion was retroactive to lapsed claims, the Legislature's express revival of a limited class of claims was proof that other classes of claims would not be revived. Although it offered evidence from the legislative history to assist in its interpretation of the express revival clause, the court did not suggest that legislative history materials could demonstrate that

12

claims could be revived in the absence of unmistakable language in the statute itself.

## B. Plaintiffs' Claims Lapsed Prior to 2002

We have demonstrated how important it is, for the purpose of deciding whether a legislatively enlarged limitations period applies to a given case, to determine whether the claim had lapsed prior to the effective date of the new enactment, and to determine what effect the Legislature decided to accord to the lapsing of a claim. Accordingly, as to section 340.1 we review the Legislature's treatment of questions of accrual and lapsing of claims, ultimately concluding that plaintiffs' claims expired by 1998 at the latest.

A cause of action accrues, and the limitations period begins to run, when " 'the cause of action is complete with all of its elements' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806). Under certain circumstances, however, the accrual of the action may be postponed and the running of the limitations period tolled "until the plaintiff discovers, or has reason to discover the cause of action. [Citations.] [¶] A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Id*. at p. 807; see also *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 634.)

The Legislature handled the timeliness of claims relating to childhood sexual abuse in a number of ways during the period in which it enacted and amended section 340.1. We review the applicable limitations periods to determine when, if at all, plaintiffs' claims lapsed, and to illustrate how the Legislature has handled the problems of lapsed claims and delayed discovery of claims.

13

*1. At the Time of the Alleged Abuse Former Section 340 Applied*

In 1972 and 1973, when it is alleged that the abuse occurred, the applicable limitations period for claims alleging sexual abuse of a child was one year from the time the cause of action accrued (former § 340, par. 3, as amended by Stats. 1968, ch. 150, § 1, p. 373; *DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1015, 1018 (*DeRose*)), and ordinarily the cause of action accrued at the time of the alleged abuse. (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 443; see also *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 210 (*Shirk*).) For persons who were minors when the alleged abuse occurred, the limitations period was tolled until one year after the time the plaintiff reached the age of majority, that is, until the age of 19. (§ 352, subd. (a); *Hightower v. Roman Catholic Bishop of Sacramento* (2006) 142 Cal.App.4th 759, 765 (*Hightower*); *Tietge v. Western Province of the Servites*, *Inc.* (1997) 55 Cal.App.4th 382, 385; *DeRose*, *supra*, at p. 1015.)

Thus the claim of the youngest of the plaintiffs, who was born in 1963,[4] lapsed in 1982 when he turned 19 years of age. At the time of the alleged abuse and subsequently there was some authority for applying the common law discovery rule under certain circumstances to delay the accrual of a cause of action

---

[4] With respect to third party defendants, courts recognized a cause of action based upon a party's direct negligence in failing to protect the plaintiff, or for hiring, retaining, or supervising the perpetrator. (See *Mark K. v. Roman Catholic Archbishop* (1998) 67 Cal.App.4th 603, 611-612 (*Mark K.*); *Snyder v. Boy Scouts of America, Inc.* (1988) 205 Cal.App.3d 1318, 1322 (*Snyder*).) Various decisions held that respondeat superior liability was not available in similar circumstances because the sexual abuse occurred outside the scope of employment (*Rita M. v. Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453, 1461; see also *Mark K., supra*, at p. 609 [asserting that a vicarious liability claim would have been available until 1986, when the *Rita M.* case was decided]; *Jeffrey E. v. Central Baptist Church* (1988) 197 Cal.App.3d 718, 721.)

based upon childhood sexual abuse.[5]  As we shall see, however, even if this authority were applied to third party defendants it would not assist plaintiffs' claim that accrual of their cause of action was delayed until they discovered that their adult injuries were caused by the childhood abuse.  This is because ultimately the Legislature substituted its own rules for the common law discovery rule, and in 1998 restricted claims against third parties to plaintiffs who had not yet reached the age of 26 — even if they could allege a delay in discovery that their adult psychological injuries were caused by childhood abuse.

---

[5]      There was authority for the proposition that common law delayed discovery principles could apply to claims against perpetrators or third party defendants. (See *Snyder*, *supra*, 205 Cal.App.3d at p. 1324 [third party defendants]; *DeRose*, *supra*, 196 Cal.App.3d at pp. 1017-1018 [perpetrator].)  Some decisions explained this was true only if the plaintiff alleged he or she had repressed all memory of the assault after it occurred — but the limitations period would not be tolled simply because, as plaintiffs in the present case alleged, the plaintiff suffered subsequent emotional harm in adulthood and experienced a delayed discovery of the *connection* of the harm with the earlier abuse.  (*DeRose*, *supra*, at pp. 1017-1019; see also *Marsha V. v. Gardner* (1991) 231 Cal.App.3d 265, 271-273.)  Other decisions adopted a somewhat broader common law delayed discovery principle regarding plaintiffs who, for psychological reasons, were unaware of the *wrongfulness* of the perpetrator's acts when they were committed, although again there was no application of the delayed discovery rule permitted simply because a plaintiff failed to recognize the connection between the abuse and the adult psychological injury.  (See *Sellery v. Cressey* (1996) 48 Cal.App.4th 538, 545; *Evans v. Eckelman* (1990) 216 Cal.App.3d 1609, 1618-1620 (*Evans*) [direct perpetrator]; see also *Mark K.*, *supra*, 67 Cal.App.4th at pp. 610-611, 612, fn. 9 [applying common law principles to a third party claim].)
      We need not parse these decisions to determine whether or how they would have applied to plaintiffs' third party claims if their lawsuit had been brought during the 1970's or 1980's.  As we shall see, the 1998 amendment to section 340.1 made it plain that causes of action against third parties lapsed when the plaintiff reached the age of 26, notwithstanding any alleged delay in discovery that adult psychological harm was caused by childhood abuse.

*2. 1986 — Section 340.1 Enacted to Extend to Three Years the
Statute of Limitations for Claims Against a Member
of the Minor's Household*

Section 340.1 was enacted in 1986, and it extended to three years the
limitations period for actions alleging sexual abuse of a minor when the
perpetrator was a *member of the minor's household*. (Former § 340.1, added by
Stats. 1986, ch. 914, § 1, pp. 3165-3166.) Because of this limitation, it would not
have applied to plaintiffs' claims.[6]

Although the 1986 statute did not apply to third party claims such as
plaintiffs', we believe it is significant to our understanding of the Legislature's
intent regarding delayed discovery to note that the statute *specifically referred to
common law delayed discovery principles*, providing that "[n]othing in this bill is
intended to preclude the courts from applying delayed discovery exceptions to the
accrual of a cause of action for sexual molestation of a minor." (Former § 340.1,
subd. (d), added by Stats. 1986, ch. 914, § 1, p. 3166.)

As further evidence that the Legislature provides expressly for the revival
of lapsed claims even when a statute embraces a delayed discovery rule, we
observe that the 1986 enactment provided: "This section shall apply to both of the
following: [¶] (1) Any action commenced on or after January 1, 1987, including
any action which would be barred by application of the period of limitation
applicable prior to January 1, 1987. [¶] (2) Any action commenced prior to

---

[6] The statute provided in pertinent part: "(a) In any civil action for injury or
illness based upon lewd or lascivious acts with a child under the age of 14 years
[or other enumerated sexual offenses], in which this conduct is alleged to have
occurred between a household or family member and a child where the act upon
which the action is based occurred before the plaintiff attained the age of 18 years,
the time for commencement of the action shall be three years." (Former § 340.1,
subd. (a), added by Stats. 1986, ch. 914, § 1, p. 3165.)

16

January 1, 1987, and pending on January 1, 1987." (Former § 340.1, subd. (e), added by Stats. 1986, ch. 914, § 1, p. 3166.)

### 3. 1990 Amendment to Section 340.1 Enlarged the Statute of Limitation to Eight Years Following the Age of Majority and Created Its Own Statutory Delayed Discovery Rule

In 1990, section 340.1 was amended to extend beyond members of the minor's household to reach any perpetrator of sexual abuse against a child. (Stats. 1990, ch. 1578, § 1, p. 7550 et seq.) Although the amended statute applied to direct perpetrators and not third party defendants such as those involved in the present case, the Legislature's expansion of the limitations period, along with its treatment of the delayed discovery rule and the revival of claims again is relevant to our inquiry.

The Legislature amended section 340.1 to significantly enlarge the limitations period from three to *eight* years following the age of majority (i.e., to age 26). (Stats. 1990, ch. 1578, § 1, p. 7550 et seq.) The amendment also *created its own statutory delayed discovery rule*, evidencing intent to provide a new rule that would extend delayed discovery principles beyond what had been recognized in the case law. (See *DeRose*, *supra*, 196 Cal.App.3d at pp. 1017-1018 [delayed discovery principles did not extend to the plaintiff's failure to recognize that adult psychological injury was caused by childhood abuse]; see also *Evans*, *supra*, 216 Cal.App.3d at pp. 1618-1620 [same].) As amended, subdivision (a) of section 340.1 provided: "(a) In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority *or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever occurs later*." (Former § 340.1,

17

subd. (a), as amended by Stats. 1990, ch. 1578, § 1, p. 7550, italics added.)  As one court commented, "The obvious goal of amended section 340.1 is to allow sexual abuse victims a longer time period in which to become aware of their psychological injuries and remain eligible to bring suit against their abusers." (*Debbie Reynolds Prof. Rehearsal Studios v. Superior Court* (1994) 25 Cal.App.4th 222, 232 (*Debbie Reynolds*); see *id*. at p. 231 [also confirming that the 1990 amendments did not apply to claims against third parties].)

Further, the language of the original 1986 statute that had embraced common law delayed discovery principles — "[n]othing in this bill is intended to preclude the courts from applying delayed discovery exceptions to the accrual of a cause of action for sexual molestation of a minor" (former § 340.1, subd. (d), added by Stats. 1986, ch. 914, § 1, p. 3166) — was deleted.  However, for actions brought *prior* to the effective date of the 1990 amendment, common law delayed discovery principles were maintained:  "Nothing in the amendments specified in subdivision (k) [making the amendments applicable to actions commenced on or after Jan. 1, 1991] shall be construed to preclude the courts from applying equitable exceptions to the running of the applicable statute of limitations, including exceptions relating to delayed discovery of injuries, with respect to actions commenced prior to January 1, 1991."  (Former § 340.1, subd. (*l*), added by Stats. 1990, ch. 1578, § 1, p. 7552.)

The 1990 amendment also provided that "[t]he amendments to this section enacted at the 1990 portion of the 1989-90 Regular Session shall apply to any action commenced on or after January 1, 1991."  (Former § 340.1, subd. (k), added by Stats. 1990, ch. 1578, § 1, p. 7552.)  Because this language did not constitute express language of revival, it was held to be *insufficient* to revive lapsed claims. (*David A.*, *supra*, 20 Cal.App.4th at p. 286; see also *Lent v. Doe* (1995) 40 Cal.App.4th 1177, 1183.)

18

*4. 1994 Amendment to Section 340.1 Expressly Revised Lapsed Claims and Deleted the Remaining Reference to Common Law Delayed Discovery Principles*

Section 340.1 was amended for a second time in 1994, and again, although the amendments did not render the statute applicable to third party defendants, the amendments are of interest because of the Legislature's efforts to use express and unmistakable language to govern revival of lapsed claims, as well as for the Legislature's elimination of the remaining reference to common law delayed discovery principles. (Stats. 1994, ch. 288, § 1, pp. 1928-1931.) The 1994 amendment added express language of revival, responding to the *David A.* decision that had determined that the 1990 amendments had not revived lapsed claims. (Legis. Counsel's Dig., Assem. Bill No. 2846 (1993-1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 111; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1651 (1997-1998 Reg. Sess.) as amended July 16, 1998, p. 8; see also *David A.*, *supra*, 20 Cal.App.4th at pp. 286-287.)

Thus the Legislature added to the language previously providing that "[t]he amendments to this section enacted at the 1990 portion of the 1989-90 Regular Session shall apply to any action commenced on or after January 1, 1991," the additional phrase "*including any action otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired* under the law existing prior to January 1, 1991." (Former § 340.1, subd. (o), added by Stats. 1994, ch. 288, § 1, p. 1930, italics added.) With respect to its own 1994 amendments, the Legislature declared its intent "in enacting the amendments to this section enacted at the 1994 portion of the 1993-94 Regular Session, that the express language of revival added to this section by those amendments shall apply to any action commenced on or after January 1, 1991." (Former § 340.1, subd. (p), added by Stats. 1994, ch. 288, § 1, pp. 1930-1931.)

At the same time, the Legislature deleted former subdivision (*l*), with its reference to the equitable exceptions to the statute of limitations and common law delayed discovery principles. (See Stats. 1994, ch. 288, § 1, p. 1930; Historical and Statutory Notes, 13C West's Ann. Code Civ. Proc. (2006 ed.) foll. § 340.1, p. 173.)

> 5. *1998 Amendment to Section 340.1 for the First Time Authorized Actions Against Third Party Defendants But Barred Such Actions by Plaintiffs Who Had Attained 26 Years of Age*

We now reach the 1998 amendments that for the first time included certain third party defendants within the scope of the enlarged limitations period that was established by the 1990 amendments — that is, by former section 340.1, subdivision (a), providing that the time to bring an action for childhood sexual abuse may be extended until three years after the plaintiff recognized the connection between adult psychological injury and the childhood abuse (Stats. 1990, ch. 1578, § 1, p. 7550). The 1998 amendment stipulated that the limitations period of subdivision (a) applied "for any of the following actions: [¶] (1) An action against any person for committing an act of childhood sexual abuse. [¶] (2) An action for liability against any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff. [¶] (3) An action for liability against any person or entity where an intentional act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff." (Former § 340.1, subd. (a), as amended by Stats. 1998, ch. 1032, § 1, p. 7785.)

Although the 1998 amendments now included certain third party defendants within the scope of the provision recognizing that the limitations period for child sexual abuse claims could run from the discovery that

20

psychological injury was caused by the childhood abuse, at the same time the amendments provided a *separate* subdivision directing that no *claim against a third party covered by subdivision (a) could be brought once the plaintiff reached the age of 26*. Specifically, the 1998 amendment added a new subdivision (b), providing that "[n]o action described in paragraph (2) or (3) of subdivision (a) may be commenced on or after the plaintiff's 26th birthday." (Former § 340.1, subd. (b), added by Stats. 1998, ch. 1032, § 1, p. 7785.)[7]

Finally, the amendments also declared that the 1998 enactment lengthening the limitations period for claims against third parties did not create "a new theory of liability." (Former § 340.1, subd. (r), added by Stats. 1998, ch. 1033, § 1, p. 7788.)

For a number of reasons, we are confident that the 1998 amendment imposed an *absolute bar* against instituting a lawsuit against third party defendants once the plaintiff reached the age of 26. Contrary to the suggestion of Justice Liu's dissent that undiscovered claims were not subject to the age 26 cutoff (dis. opn. of Liu, J., *post*, at p. 2), the 1998 amendment expressed the limit in absolute terms. It did not distinguish between discovered and undiscovered claims, but rather made plain that *no* third party action brought under section 340.1, subdivision (a) — a provision that itself provided a limitation period that could be measured from the time of discovery — may be brought once the plaintiff reaches the age of 26. Absent from subdisivion (b)'s absolute language is any reference to delayed discovery once a plaintiff with a third party claim

---

[7]     The enactment also relettered the subdivisions that appeared in prior versions of the statute that referred to application of the 1990 and 1994 amendments. (Compare former § 340.1, subds. (p), (q), as amended or added by Stats. 1998, ch. 1032, § 1, p. 7788, with former § 340.1, subds. (o), (p), added by Stats. 1994, ch. 288, § 1, p. 1930.)

reached age 26 — despite the Legislature's evident familiarity with the problem of delayed discovery in the 1990 and 1994 versions of the statute and its awareness of the need for express revival provisions.  The Legislature made an obvious choice to use language for claims against third party defendants that differed markedly from the language it still used for claims against direct perpetrators.  (See *Moore*, *supra*, 112 Cal.App.4th at p. 382 ["An express legislative provision for circumstances which will toll a statute [of limitations] excludes, by necessary implication, all other exceptions"].)  As to plaintiffs with claims against these third party defendants, the Legislature elected to toll the limitations period to age 26, but no longer.

Our interpretation was shared by the court in *Hightower* (*Hightower*, *supra*, 142 Cal.App.4th at p. 767; see also *Shirk*, *supra*, 42 Cal.4th at p. 208), and indeed, the Court of Appeal in the present case interpreted the 1998 amendments as we have done.  Describing the law prior to the 2002 amendments, it observed that unlike for claims against direct perpetrators, "as against third parties, . . . the outside limit was age 26.  [Citation.]  Thus, under the prior law, any person discovering after age 26 that childhood abuse was the cause of his or her adulthood injuries was barred from suing responsible third parties."  Plaintiffs' brief on the merits describes the effect of the 1998 amendments in the same way.  Finally, legislative history supports the same interpretation.  Attempting to "strike a balance between the interests of the victims and the purpose behind the statute of limitations," the original bill was narrowed to carefully define the third party claims to which it applied and "to require commencement of the action before the plaintiff's 26th birthday."  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1651 (1997-1998 Reg. Sess.) as amended July 30, 1998, p. 4, underscoring omitted; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading

22

analysis of Assem. Bill No. 1651 (1997-1998 Reg. Sess.) as amended Aug. 19, 1998, pp. 1, 3, 4, 7.)

Plaintiffs were 26 years of age or older on the effective date of the 1998 legislation. When the 1998 amendment went into effect, it is certain that their claims had lapsed.

6. *1999 Amendment to Section 340.1 Clarified and Extended the 1998 Amendment and Its Application to Prospective and Pending Actions Filed Prior to January 1, 1999*

In 1999, section 340.1 was amended for the fourth time, but these amendments did nothing to revive plaintiffs' lapsed claims. (Former § 340.1, as amended by Stats. 1999, ch. 120, § 1, pp. 1735-1739.) In language then lettered as subdivision (s) (but now appearing in subd. (u)) of the statute, the 1999 amendment extended the changes effected by the 1998 amendment to "any action commenced on or after January 1, 1999, and to any action filed prior to January 1, 1999, and still pending on that date, including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999. Nothing in this subdivision is intended to revive actions or causes of action as to which there has been a final adjudication prior to January 1, 1999." (Former § 340.1, subd. (s), added by Stats. 1999, ch. 120, § 1, pp. 1738-1739.) This language had the effect of reviving, *for potential plaintiffs still under the age of 26*, previously lapsed claims. There is no reference to the discovery rule or permitting claims to be made after the age of 26. Plaintiffs, having *already* passed the age of 26, and not having instituted an action prior to January 1, 1999, were not aided by this amendment, and their claims remained lapsed.[8]

---

[8] As we explained in a prior decision: "In 1999, the Legislature again amended section 340.1, clarifying that its 1998 changes relating to the liability of nonabuser persons or entities were prospective — that is, its provisions applied

*(footnote continued on next page)*

23

### C. The 2002 Amendment to Section 340.1 Created a Subcategory of Third Party Defendants Against Whom Actions Could Be Brought Within Eight Years of Majority or Three Years of Discovery of the Injury

We come finally to the 2002 amendment of section 340.1, which, as noted, identified a new subcategory of third party defendant who henceforth would *not* receive the protection of the absolute cutoff of age 26. (Stats. 2002, ch. 149, § 1, pp. 752-753.) It is into this category that plaintiffs claim defendant falls. Under the 2002 amended statute, a category of third-party defendants would be exposed to liability in any action for recovery of damages suffered as a result of childhood sexual abuse for the same extended period as direct perpetrators.

The 2002 amendments did not alter section 340.1, subdivision (a), with its limitation period of eight years from majority (i.e., age 26) or three years from the time the plaintiff discovered or reasonably should have discovered that adult psychological injury was caused by childhood abuse — whichever period is longer. The category of third party defendants to whom the subdivision (a) limitations period applied was not amended (see § 340.1, subd. (a)(2) & (3)), but a new subcategory of such defendants was defined. Significantly, the existing outer limit — that is, the age 26 cutoff on third party claims — remained, and the statute still provides that "[n]o action described in paragraph (2) or (3) of subdivision (a) may be commenced on or after the plaintiff's 26th birthday." (§ 340.1, subd. (b)(1).

---

*(footnote continued from previous page)*

only to actions begun on or after January 1, 1999, or if filed before that time, actions still pending as of that date, 'including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999.' " (*Shirk*, *supra*, 42 Cal.4th at p. 208.)

However, under the 2002 amendment, for the first time a special *exception* to the age 26 cutoff appeared and provided a longer limitations period for childhood sexual abuse claims, subject to the statutory delayed discovery rule already defined by subdivision (a) of the statute. (Stats. 2002, ch. 149, § 1, pp. 752-753.)

This exception was adopted to apply to claims against a subcategory of the third party defendants that already had been defined in section 340.1, subdivision (a)(2) and (3). Thus, in 2002 the Legislature added subdivision (b)(2) to section 340.1, and as relevant, the new subdivision provides: "This subdivision [referencing subd. (b)(1), declaring third party claims to be timely solely if they are brought prior to the plaintiff's 26th birthday] does not apply if the person or entity knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment." (§ 340.1, subd. (b)(2).) Instead of the general rule restricting a plaintiff's claim against third parties to a plaintiff who had not reached the age of 26, claims against such subcategory of third party defendants are governed by subdivision (a), described above, establishing, as noted, the limitations period of eight years from majority or three years from discovery, as defined.

To sum up, in its 2002 amendments to section 340.1, the Legislature enlarged the limitations period applicable to childhood sexual abuse claims against a certain subcategory of third parties by extending subdivision (a)'s existing expansive limitations period — including its recognition of delayed discovery — to claims against these third parties, but without the age 26 cutoff. For claims

against defendants falling within that subcategory of third party defendants, actions for damages suffered as the result of childhood sexual abuse would be timely even if brought beyond eight years after obtaining majority, so long as they were brought "within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later . . . ." (§ 340.1, subd. (a).)  In substance, potential plaintiffs with claims against the subcategory of third party defendants were in the position of plaintiffs with claims against perpetrators after the 1990 amendments — they could claim the benefit of the extended period established by section 340.1, subdivision (a).

We recall that the 1990 amendments, which created subdivision (a)'s extended discovery period, did not revive lapsed claims.  (*David A.*, *supra*, 20 Cal.App.4th at p. 286; see also *Lent v. Doe*, *supra*, 40 Cal.App.4th at p. 1183.)  In 2002, however, the Legislature *followed* the requirement discussed previously that revival of lapsed claims must be accomplished expressly, but it also limited the period of revival.  Thus, section 340.1, subdivision (c) now provides that "[n]otwithstanding any other provision of law, *any claim* for damages described in paragraph (2) or (3) of subdivision (a) that is permitted to be filed pursuant to paragraph (2) of subdivision (b) that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, *in that case*, a cause of action may be commenced within one year of January 1, 2003.  Nothing in this subdivision shall be construed to alter the applicable statute of limitations period of an action that is not time barred as of January 1, 2003." (Italics added.)[9]  This language revived any lapsed claims,

_____

[9]    Additional revival clauses dating from the several earlier amendments to section 340.1 survive, relettered as subdivisions (r), (s), and (u) of the statute.

*(footnote continued on next page)*

giving them the benefit of the new enactment, but the claims were revived for *only one year*.

The first sentence of section 340.1, subdivision (c) refers to "any claim" that is barred. The phrase "any claim" is inclusive language that by its terms refers to any lapsed claim, whether previously discovered or not. The first sentence of the subdivision revives a claim that has lapsed by virtue of the passing of the limitations period, and "in that case" — i.e., in any case that was barred but is revived — requires the action to be brought within the one year window period.

---

*(footnote continued from previous page)*

Subdivision (r) provides that "[t]he amendments to this section enacted at the 1990 portion of the 1989-90 Regular Session shall apply to any action commenced on or after January 1, 1991, including any action otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired under the law existing prior to January 1, 1991." Subdivision (s) provides that "[t]he Legislature declares that it is the intent of the Legislature, in enacting the amendments to this section enacted at the 1994 portion of the 1993-94 Regular Session, that the express language of revival added to this section by those amendments shall apply to any action commenced on or after January 1, 1991." And subdivision (u) provides that "[t]he amendments to subdivision (a) of this section enacted at the 1998 portion of the 1997-98 Regular Session, shall apply to any action commenced on or after January 1, 1999, and to any action filed prior to January 1, 1999, and still pending on that date, including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999. Nothing in this subdivision is intended to revive actions or causes of action as to which there has been a final adjudication prior to January 1, 1999."

We also note the addition of subdivision (d), exempting from subdivision (c) claims that have been (1) litigated to finality on the merits prior to January 1, 2003 or (2) settled, as defined. Language in subdivision (d)(1) — providing that termination on the basis of the statute of limitations does not constitute a claim that has been litigated to finality on the merits — has been held inconsistent with the separation of powers doctrine. (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 187-188 [the Legislature lacks authority to revive an action resolved in a final judgment that applied an prior limitations period].)

27

There is no language in either sentence of subdivision (c) that permits a longer period for hitherto undiscovered claims. The subdivision quite plainly supplies an exception to the general rule against retroactive enlargement of limitations periods once claims have lapsed. We recall that lapsed claims are revived only by express language of revival. And from subdivision (c)'s expressly limited exception, we infer that *other* exceptions to the general rule were not intended. It is a settled rule of statutory construction that "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 195.) In *Moore*, *supra*, 112 Cal.App.4th 371, for example, the court applied this rule of construction in the context of an enlarged limitations period for claims against a crime victim's restitution fund, concluding that claims not noted in the statute's new language were not affected. (*Id*. at p. 382; see also *Krupnick*, *supra*, 115 Cal.App.4th at pp. 1029-1030 [interpreting an expansion of the limitations period for personal injury claims, the court inferred from the statute's express language of revival for victims of terrorist acts that the Legislature excluded retroactive enlargement of the statute of limitations as to *other* lapsed claims].)

We observe, too, that the Legislature has experience with phrasing revival clauses in connection with its various amendments to section 340.1, and as discussed above, has used separate revival clauses even as it created or made changes to delayed discovery provisions in the statute (see former § 340.1, subd. (e), added by Stats. 1986, ch. 914, § 1, p. 3166; former § 340.1, subds. (o) & (p), added by Stats. 1994, ch. 288, § 1, pp. 1930-1931; former § 340.1, subd. (s), added by Stats. 1999, ch. 120, § 1, pp. 1738-1739.) We may infer from the absence of broad language of revival with respect to the 2002 enlargement of the limitations period, that the Legislature did not intend, merely because it extended a

28

discovery provision to a new class of defendants, to authorize revival of lapsed claims *except as specified in section 340.1, subdivision (c)*.

We have pointed out that express statutory language is required to revive lapsed claims. In the absence of any attempt by the Legislature in 2002 to add express language of revival to subdivision (a) of section 340.1, and in the absence of any language of revival in the newly added text of subdivision (b)(2), and in the *presence* of *express but limited* language of revival in subdivision (c) that purports to govern "*any claim*" (italics added) against the new subcategory of third party defendants that previously had lapsed, it seems evident that "any claim" against a defendant alleged to fall within the third party subcategory that had lapsed prior to January 1, 2003, was revived, but *only* for the period referred to in the amended statute — that is, only for one year following January 1, 2003. Here, plaintiffs' claims had lapsed prior to the 2002 enactment (because they were over 26 years of age), but they failed to bring their action during the revival period, so the trial court correctly concluded that their action is barred.

Our conclusion is consistent with the reviewing court's decision in *Hightower*, *supra*, 142 Cal.App.4th 759. There the court determined that the plaintiff's third party claims had lapsed in 1977, one year after he reached majority, and that his claims clearly were time-barred under the 1998 amendments to section 340.1 because he had then attained the age of 26. The plaintiff countered that he had not discovered the injury until 2003, and he claimed that therefore the 2002 amendments extending the statutory delayed discovery rule to certain third party defendants applied to his claims The Court of Appeal disagreed, explaining that the circumstance that the plaintiff would have been able to assert delayed discovery under the 2002 amendments — if his claims had not previously lapsed — did not alter the result. The court observed that "the Legislature revived for only one year all such claims that were already time-

29

barred. The Legislature therefore drew a clear distinction between claims that were time-barred and those that were not. Hightower's interpretation would obliterate that distinction by allowing his time-barred claim to take advantage of the new limitations period. Therefore, the new delayed discovery rule does not revive Hightower's previously lapsed claims." (*Hightower*, *supra*, 142 Cal.App.4th at pp. 767-768.)

We have established that the revival of any lapsed claims against the subcategory of defendants identified in the 2002 amendments is governed by subdivision (c). We have also established that as of 1998 plaintiffs' claims necessarily had lapsed. Plaintiffs' claims were not revived by the 1999 amendments. Thereafter, plaintiffs' lapsed claims *were* revived by the 2002 amendments, but for one year only. Because they did not file their claims within that year, their claims are barred under the applicable statute of limitations.

### D. Analysis of Contrary Views

#### 1. *Subdivision (c)*

Plaintiffs offer a contrary reading of subdivision (c) of section 340.1, contending that the first sentence, with its one-year revival of lapsed claims, applies to discovered claims that have lapsed, whereas the second sentence governs claims such as theirs that had not been discovered prior to the effective date of the 2002 amendments. Plaintiffs contend that the only plausible interpretation of the second sentence is that it refers to claims by persons who were 26 years of age or older as of January 1, 2003, but who had not yet discovered the connection between the childhood abuse and their injuries. We are not persuaded.

We have concluded that *any* claim by persons who were 26 years of age or older as of 1998 *was* time-barred prior to the 2002 amendment, whether the claims had been discovered or not. Accordingly, we disagree that the second sentence of

30

section 340.1, subdivision (c), referring to claims that are *not* time-barred, applies to such claims. Rather, the language to which plaintiffs refer appears to invoke the rule we have discussed above, that an enlarged limitations period is said to apply prospectively, and properly, to claims that have not lapsed as of the effective date of the enactment.

Justice Corrigan's dissent also turns to the second sentence of section 340.1, subdivision (c), concluding that under that sentence, undiscovered claims that previously were time-barred are not subject to the one-year limitation appearing in the first sentence. As noted, that sentence provides: "Nothing in this subdivision shall be construed to alter the applicable statute of limitations period of an action that is not time barred as of January 1, 2003." (*Ibid*.) According to Justice Corrigan's dissent, plaintiffs' claims were not time-barred "as of January 1, 2003," because on that date they benefitted — for the first time — from the discovery provision of subdivision (a) that had been newly extended to the new subcategory of defendant. Her dissent would conclude that the second sentence of subdivision (c) means that undiscovered claims, no longer being time-barred under the newly amended statute, are revived, and are not subject to the restriction of the one-year revival clause.

We are not persuaded that the inferences drawn by Justice Corrigan's dissent are supported by the language of the enactment. Again, the first sentence of the subdivision provides that "*any claim* for damages that is permitted [under the 2002 amendment] to be filed that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and *in that case*, a cause of action may be commenced within one year of January 1, 2003." (§ 340.1, subd. (c), italics added.) This sentence plainly states that *any* claim that is barred by the limitations period is revived — but "*in that case*," i.e., the case of any barred but revived claim, the action must be brought

31

within the one-year period. The "applicable statute of limitations period" for plaintiffs' claims lapsed no later than 1998, and the "applicable . . . period" was not subject to extension by virtue of their delay in discovery that their adult injury was caused by childhood abuse.

The conclusion of Justice Corrigan's dissent seems to depend upon an assumption that as of January 1, 2003, plaintiffs' claims were not time-barred because subdivision (a) of section 340.1 *itself* operates to revive claims, but we have found no such language in that provision. Prior to January 1, 2003, however, plaintiffs' claims had *already* become time-barred. The 2002 amendment extending the limitations period until three years after discovery did not change that fact, in the absence of express language of revival. Subdivision (a) of section 340.1 did not provide such language, nor did the new language of subdivision (b).

The dissent by Justice Corrigan points to the phrase "as of January 1, 2003" in the second sentence of section 340.1, subdivision (c). (Dis. opn. of Corrigan, J., *post*, at p. 3.) But the first sentence reviving lapsed claims *also* refers to claims that would be barred as of January 1, 2003 but for the new law. The two sentences do not seem to us to be speaking of different categories of claims requiring revival, nor does the subdivision expressly differentiate between discovered and undiscovered claims.

Rather, in our view the second sentence of subdivision (c) states solely what the one-year revival period does *not* do. It is a savings clause that makes plain in the statute a principle that exists in the case law — that an enlarged limitations period is considered to apply *prospectively* and appropriately to actions that are *not* already barred even if the conduct occurred prior to the enactment. (See *Andonagui*, *supra*, 128 CalApp.4th at p. 440.) The second sentence of subdivision (c) specifies that the limited one-year revival clause should not be interpreted to cut off claims that have *not* lapsed and that need no revival —

32

claims, for example, of a plaintiff who was under age 26 when the amendment was enacted and that had not been barred under the 1998 amendment, or claims as to which the running of the statutory period may have been tolled by operation of law (see e.g., §§ 351 [tolling during minority or insanity], 352.1 [two-year tolling beyond accrual for incarcerated persons], 354 [tolling during war]).

Similar language had been used in 2000 when the Legislature enacted a provision reviving certain otherwise time-barred insurance claims arising from the 1994 Northridge earthquake. (§ 340.9, subd. (a), added by Stats. 2000, ch. 1090, § 1, p. 8496.) The enactment revived any claim "which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired" — but only for one year. (*Ibid*.) Like the revival clause in section 340.1, section 340.9 "did nothing more than reopen the filing window, for a one-year period, to those *otherwise viable* [*claims*] that had become time-barred." (*Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 858.)

In language nearly identical to that found in the second sentence of section 340.1, subdivision (c), section 340.9 also provided: "Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section [i.e., Jan. 1, 2001]." (§ 340.9, subd. (c).) The Court of Appeal in *Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89 believed that the language of subdivision (c) of the statute — an almost exact parallel of the language of the second sentence of section 340.1, subdivision (c) — was merely intended to ensure that the one-year limit contained in the new statute's revival provision did not restrict a plaintiff who, prior to the effective date of the new enactment, already had a viable claim. (*Cordova, supra,* at p. 98.) More colloquially, the *Cordova* decision explained: "[I]t is difficult to imagine a purpose for subdivision (c) other than to say, in effect, if you could have

33

sued your insurer without the benefit of this statute nothing in this statute limits your right to do so." (*Ibid.*)

Plaintiffs in the present case could *not* have sued defendants without the benefit of the 2002 amendments. Not only were they all over the age of 26 in 1998, they could not in any case have extended the limitations period on the ground now asserted — a delay in discovery that their adult injuries had been caused by childhood abuse. Without the benefit of the 2002 amendments, plaintiffs did not have a defense to defendant's claim that their suit was barred by the running of the statute of limitations.

Significantly, there is evidence that the Legislature had section 340.9, subdivision (c) in mind as it drafted the 2002 amendment to section 340.1. (See Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 17, 2002, p. 4 [noting § 340.9 as "[p]recedent" for extending a limitations period and "reviv[ing] certain time-barred actions for a one-year window period"]; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 6, 2002, p. 7 [noting that § 340.9 "provides victims of the 1994 Northridge earthquake an additional year to file claims by reviving any insurance claim for quake-related damages which would otherwise be barred"].) Even though the Legislature could not have been aware of the *Cordova* opinion's interpretation when it adopted the 2002 amendments to section 340.1, the court's interpretation of the meaning of the language the Legislature chose to use in both instances is quite persuasive.

In supplemental briefing filed after oral argument, plaintiffs have asserted that such an interpretation of section 340.1, subdivision (c) is inconsistent with this court's decision in *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363. They reasoned that in that case we concluded that section 337.15, with its 10-year limit (measured from completion of construction) on latent construction defect claims, was phrased

34

in such absolute terms as to preclude application of the doctrine of equitable tolling,  By analogy, plaintiffs contended, because the age 26 cutoff contained in section 340.1 was so absolute prior to the 2002 amendment that there would be no possibility that claims prior to 2002 *would* have been tolled under statutory tolling provisions, accordingly the second sentence of subdivision (c) must not refer to such an eventuality.  Our decision in *Lantzy* is inapposite.  It did not speak to the issue of statutory tolling (*id*. at p. 383, fn. 17), but to the judicial rule permitting equitable tolling when the plaintiff has given notice of the claim and tolling would not prejudice the defendant.  Such a tolling rule would have been inconsistent with various aspects of section 337.15 not found in section 340.1.  Nor did the statute under review in *Lantzy* contain language such as is found in section 340.1, subdivision (c).

  *2. Subdivision (u)*

  Subdivision (u) (formerly § 340.1, subd. (s)),[10] provides:  "The amendments to subdivision (a) of this section, enacted at the 1998 portion of the 1997-98 Regular Session, shall apply to any action commenced on or after January 1, 1999, and to any action filed prior to January 1, 1999, and still pending on that date, including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999.  Nothing in this subdivision is intended to revive actions or causes of action as to which there has been a final adjudication prior to January 1, 1999."

---

[10] In 1999, the Legislature enacted subdivision (s) of section 340.1 (former § 340.1, subd. (s), as amended by Stats. 1999, ch. 120, § 1, pp. 1738-1739), and the language of this subdivision was relettered as subdivision (u) in the 2002 amendment.  (§ 340.1, subd. (u), as amended by Stats. 2002, ch. 149, § 1, pp. 5-6.)

Plaintiffs suggest that the Legislature's 2002 inclusion of subdivision (u) demonstrates a legislative intent that subdivision (u) apply to revive any case filed after January 1, 1999, against the subcategory of third party defendants described in subdivision (b)(2). They argue that unless we adopt this interpretation, we will be left with the conclusion that subdivision (u) constitutes surplusage — a conclusion that should be avoided according to standard rules of construction. We disagree with plaintiffs' analysis.

We have described the sequence of amendments that culminated in 1998 with a provision that, for the first time, supplied an enlarged limitations period for claims against parties who were not the direct perpetrators of the alleged abuse. (*Ante*, at pt. II.B.1.-4.) Under the 1998 amendment, a plaintiff henceforth would have until the age of 26 (not age 19, as before; see pt. II.B.5., *ante*) to file the action. We have explained that as of 1998, when a plaintiff reached the age of 26, the statute raised an absolute bar to a suit against a third party defendant, and, unlike cases against direct perpetrators, the 1998 enlargement would not recognize discovery that adult injury was caused by childhood abuse to delay the running of the limitations period past the age 26 cutoff.

It seems evident to us that section 340.1, subdivision (u) constituted an express revival of claims that previously had lapsed but would otherwise now be governed by the 1998 amendment — that is, claims by persons younger than age 26. Under subdivision (s) (as the provision was designated in 1999), a claim by a person who was 20 in 1998, whose claim previously had lapsed at the age of 19, would, under the 1998 amendments, have a revived claim and would be entitled to sue a third party defendant. Far from constituting surplusage, the revival language was still relevant in 2002 when it was redesignated as subdivision (u). For example, a person who was under the age of 26 in 2003 (when the 2002 amendments went into effect), who had not yet filed suit against a third party

36

defendant (pursuant to the 1998 amendment) would still need the express revival language of subdivision (u) since these claims would have lapsed when he or she had turned 19 years of age.

The retention of the language of subdivision (u) in 2002 does not, as plaintiffs suggest, indicate that it was retained to revive any claims filed against the subcategory of third party defendants after January 1, 1999.  Such an interpretation becomes all the more unlikely when we recognize that in 2002, when the Legislature adopted new subdivision (c) of section 340.1, it provided an express revival clause for any lapsed claims identified in subdivision (b)(2), but limited the revival to one year.

In support of their interpretation that subdivision (u) serves to revive any claim against these third party defendants after January 1, 1999, plaintiffs rely upon *Bouley v. Long Beach Memorial Medical Center* (2005) 127 Cal.App.4th 601 (*Bouley*).  In that case, a statute governing standing in wrongful death actions directed that " '[t]his section applies to any cause of action arising on or after January 1, 1993.' " (*Id.* at p. 607, quoting § 377.60, subd. (d).)  Although the provision had been added in 1997 to remedy problems created by a 1996 amendment (*Bouley*, *supra*, at p. 607), the reviewing court concluded the 1997 provision nonetheless applied to render a *subsequent* 2002 amendment concerning standing applicable to lawsuits instituted after the new amendment took effect. The court pointed out that the Legislature must have retained the language for some purpose, concluding that the retention of the older provision was intended to make the 2002 amendments "operate retroactively." (*Id.* at pp. 606, 607.)

The decision offers no guidance in the matter before us.  Section 377.60 concerns standing, and is not a statute of limitations.  As we have seen, statutes of limitations are subject to their own rules when it comes to what is seen as a retroactive application — that is, enlargement of the limitations period to include

37

*lapsed* claims. Thus, for example, the statutory language relied upon in *Bouley, supra,* 127 Cal.App.4th at page 607 — " '[t]his section applies to any cause of action arising on or after January 1, 1993' " — would not constitute sufficiently express language of revival in the context of section 340.1. (*David A*., *supra*, 20 Cal.App.4th at p. 286.) By contrast, and contrary to the analysis appearing in the *Bouley* decision, we have stated that to apply amended rules that concern solely the issue of standing to cases brought after the amendment ordinarily is considered a *prospective* application of the new rule. (*Disability Rights*, *supra*, 39 Cal.4th at p. 232.) Finally, the language in *Bouley* did not contain language comparable to that appearing in subdivision (u), that is, language expressly tying the subdivision to the changes made in a particular year.

### 3. Prospective Application

The Court of Appeal concluded that plaintiffs' claims were timely within the meaning of the 2002 amendment to section 340.1. The court acknowledged that the 1998 amendment imposed an absolute age limit upon claims brought against third parties. Nonetheless, in its view, the 2002 amendment applied *prospectively* to persons like plaintiffs, who were more than 26 years of age in 1998 but discovered their injury *subsequent* to the effective date of the 2002 amendment. Under the court's interpretation, "[e]ffective 2003 . . . the Legislature deleted the age 26 cutoff as against a narrow category of third party defendants who had both the knowledge and the ability to protect against abusive behavior but failed to do so. Anyone discovering that childhood abuse was the cause of the injuries after 2003 could sue these — more culpable — defendants without regard to the age 26 cutoff."

Explaining the express revival clause of subdivision (c) of section 340.1, the court added: "And, for those who had *previously discovered* the cause of their injuries but could not sue under the prior law because of the age 26 cutoff

38

[citation], the Legislature offered a one-year window in which they could file their claims [citation]." (Italics added.)

The Court of Appeal relied principally upon *Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727 (*Nelson*). First, the Court of Appeal in the present case pointed out that the timeliness of plaintiffs' claims had not been adjudicated previously. The court maintained that in the absence of a judgment the claims were not "extinguished," but rather were " '*still pending or potential*' " when the 2002 amendments became effective and when the discovery of the cause of plaintiffs' adult injuries occurred. (Italics added.) For this reason the Court of Appeal believed it was irrelevant that under prior law, plaintiffs' claims had accrued and lapsed prior to the effective date of the 2002 enactment. The court explained: "Because no court has previously adjudicated the timeliness of plaintiffs' action, the claims are considered 'still pending or potential and [are] governed by the changed rules for accrual.' [Citation.] And, the fact that prior limitations periods may have expired before section 340.1, subdivision (b)(2)'s more liberal discovery rule became effective and before any complaint was filed does not bar plaintiffs' action, because discovery of the cause of plaintiffs' psychological injuries had not yet occurred. Therefore, there was no 'extinguishment [and] there is no problem of an impermissible retroactive revival of a barred cause of action impairing defendant['s] vested rights.' "

Further, according to the Court of Appeal, it was significant that the amendments to section 340.1 were merely procedural, affecting remedies but not substantive rights. Because the amendments were procedural, in the court's view the law permitted them to apply prospectively to pending or future litigation, even if that litigation is based upon conduct that took place before the amendment took effect.

39

The Court of Appeal's reliance upon *Nelson*, *supra*, 172 Cal.App.3d 727, is misplaced. That decision concerned an enlargement of a special limitations period for asbestos-related injuries governed by section 340.2. The reviewing court held that the enlarged limitations period applied to a claim even though the claim had lapsed under the former limitations period prior to the effective date of the new enactment. As the Court of Appeal in the present case explained, the *Nelson* court reached this conclusion in large part because the claim had not been "extinguished" by a judgment prior to the effective date of the new enactment. The *Nelson* court added that applying the new enactment "does not even really involve an extension of the prior statute's one-year period of limitation. Rather, it adopts a different standard for accrual, postponing the commencement of the running of the one-year limitation." (*Nelson*, *supra*, at pp. 732-733.)

The *Nelson* court relied in part upon uncodified language enacted with section 340.2: "The provisions of this act shall apply to those causes of action which accrued prior to the change in the law made by this act and have not otherwise been *extinguished by operation of law*." (Stats. 1979, ch. 513, § 2, p. 1690, italics added.) The *Nelson* court, relying upon prior intermediate court authority ascertaining legislative intent, understood the specific phrase " ' "extinguished by operation of law" ' " to refer to a claim that had been finally adjudicated as barred by the statute of limitations. (*Nelson*, *supra*, 172 Cal.App.3d at pp. 732-733.) In the *Nelson* court's estimation, because the timeliness of the plaintiff's claims had not been adjudicated, the claims were "still pending or potential and [are] governed by the changed rules for accrual." (*Id.* at p. 732.)

The *Nelson* decision is distinguishable from the present case because it turned in part upon the language of the particular statute there at issue — language that is not found in section 340.1. Specifically, unlike the Legislature's reference to claims that are "extinguished by operation of law" in connection with section

40

340.2 (Stats. 1979, ch. 513, § 2, p. 1690), as we have seen, in the present case the various amendments to section 340.1 refer to "revival" of claims that have "lapsed" by virtue of the "expiration" of the statute of limitations. Given the significant differences between the language and history of sections 340.1 and 340.2, the *Nelson* court's analysis of the uncodified language of section 340.2 is not helpful to the present case.

The *Nelson* court also reasoned that because statutes of limitation are procedural, they are "not subject to the general rule that statutes should not be retroactive" (*Nelson*, *supra*, 172 Cal.App.3d at p. 733), a point echoed by the Court of Appeal in the present case. Both courts also relied upon their understanding that the expiration of the limitations period did not afford defendants a vested right of repose. (*Nelson*, *supra*, at pp. 732, 733-734.) But notwithstanding the emphasis placed on both these points by the *Nelson* court and the Court of Appeal in the present case, this court has explained that when we are called upon to determine whether a statute permissibly may apply retroactively, the distinction between procedural and substantive rules is not particularly helpful. (*Disability Rights*, *supra*, 39 Cal.4th at p. 231.) Similarly, our analysis in the present case does not depend upon identifying any vested rights on the part of defendant; indeed, we have acknowledged that ordinarily the Legislature has authority to enlarge limitations periods even as to lapsed claims, as long as it does so expressly or otherwise makes its intent unmistakably clear.

Moreover, we reject the suggestion made by the Court of Appeal in the present case that, for the purpose of deciding the applicability of a new, enlarged limitations period, the general rule is or should be that the new law applies unless there is a *judgment* upholding a statute of limitations defense. As we have explained, well-established case law establishes that a statute enlarging a limitations period is not interpreted to revive claims as to which the prior

41

limitations period already had run before the effective date of the enactment — in the absence of an express statement of revival. In none of those cases had there been a prior judgment upholding a statute of limitations defense. Rather, the cases have spoken of the "lapsing" of the claim or the "running" or "expiration" of the limitations period. (See, e.g., *Douglas Aircraft*, *supra*, 58 Cal.2d at pp. 464-466; *Krupnick*, *supra*, 115 Cal.App.4th at pp. 1028-1029; *Gallo*, *supra*, 200 Cal.App.3d at p. 1378; see also *David A.*, *supra*, 20 Cal.App.4th at pp. 284, fn. 4, 285-286 [explaining that a lapsed claim is one as to which the limitations period has run, giving rise to a potential defense, and objecting to the use of the term "barred" or "extinguished" to refer to lapsed or expired claims rather than claims that have been extinguished by a judgment]; 58 Cal.Jur.3d, *supra*, Statutes, § 38, pp. 418-419.)

Indeed, there would be little need for the Legislature to trouble itself with a revival clause at all when it decided to enlarge a limitations period, if a claim could lapse for the purpose of expanded limitations periods only after a judgment had been entered sustaining a statute of limitations defense. Even without a revival clause, ordinarily a final judgment is conclusive. (See *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211, 227; *People v. Bunn* (2002) 27 Cal.4th 1, 19; *Perez v. Roe 1*, *supra*, 146 Cal.App.4th at pp. 185-188 [interpreting § 340.1, subd. (d)(1) and observing that "[o]nce the judgments . . . were upheld on appeal . . . they became final for separation of powers purposes and could not be legislatively revived"].)

We do not believe that the *Nelson* decision stands broadly for what would be a remarkable proposition — that in no case does a claim lapse by virtue of the running of the statute of limitations until there is a judicial determination that the claim has become untimely. Contrary to the policy in favor of repose evinced by a statute of limitations, such a rule would require defendants who wish to achieve

42

repose and to avoid potential future expansion of the limitations period to bring actions for declaratory judgment with respect to claims no plaintiff had yet made. The policy in favor of permitting defendants to "assume" that an expired claim will not be revived would not be served by such a rule. (See *Gallo*, *supra*, 200 Cal.App.3d at p. 1378 [the reason for the rule is the "unfairness in reviving a cause after the prospective defendant has assumed its expiration and has conducted his affairs accordingly"].)

In addition, the interpretation offered by the Court of Appeal basically relies upon the discovery rule of section 340.1, subdivision (a) to renew the accrual of a lapsed claim, in conflict with the principle that we do not infer intent to revive lapsed claims from broad, general language. And as explained in the previous part, the Legislature's previous experience with the need for an express revival clause makes us confident that in 2002 the Legislature did not suppose that the delayed discovery language it extended to a certain category of claims by itself revived lapsed claims.

Nor are we persuaded by plaintiffs' position at oral argument that subdivision (a) applies prospectively to their claims because their adult psychological injuries were so separate from the original childhood injuries that a new claim accrued when they discovered the connection between their adult injuries and the childhood abuse. In essence, the claim is that plaintiffs had no need for the revival of their previously barred claims.

As we have seen, plaintiffs could have established defendant's liability for its negligence in retaining Father Broderson when the abuse occurred. (See *ante*, fn. 4.)

Moreover, the history and wording of section 340.1 does not support plaintiffs' argument. In 1990, the Legislature amended the statute of limitations applicable to "any civil action for recovery of damages suffered as a result of

43

childhood sexual abuse" to recognize that a delayed awareness that adult psychological injury was caused by childhood abuse would justify tolling the limitations period for the underlying claim against the perpetrator. (§ 340.1, subd. (a), as amended by Stats. 1990, ch. 1578, § 1, p. 7550.) But the amendment did not treat adult psychological injury as an entirely separate and new injury. Rather, the new language was intended to afford victims a longer period in which to become aware of their injuries. (*Debbie Reynolds*, *supra*, 25 Cal.App.4th at p. 232.)

In 1998, when the Legislature decided that a plaintiff's delayed discovery that adult psychological injury was caused by childhood abuse also should affect the running of the limitations period for claims against certain third parties, the enactment did not recognize a new and different injury as to which a new cause of action accrued. Indeed, the enactment specified that the amendments did not "create a new theory of liability." (§ 340.1, subd. (r), added by Stats. 1998, ch. 1032, § 1, p. 7788, now § 341, subd. (t).)

Finally, we observe that section 340.1 purports to govern the limitations period for *any* civil action based upon damages suffered as the result of childhood sexual abuse. There is no indication in the statute itself that the Legislature viewed adult psychological injury caused by childhood abuse as a new and separate injury giving rise to a new cause of action with its own accrual and limitations period. Rather, the Legislature made a series of efforts to afford victims of childhood abuse enough time to discover the connection between their adult suffering and the abuse. If the Legislature had viewed adult psychological suffering as a separate injury giving rise to a new cause of action with a new limitations period, it would be anomalous for the Legislature to restrict the availability of the delayed discovery rule for third party claims to persons under the age of 26, as the Legislature did in 1998. Similarly, even under the statute as

44

amended in 2002, only claims against a certain subcategory of third parties could be brought after the plaintiff reaches age 26. This seems inconsistent with the view that adult injury constitutes a separate and distinct injury giving rise to a new cause of action with its own limitations period.[11]

The Legislature is charged with balancing the interests of injured persons and third party defendants. Although, as we have discussed, it may revive lapsed claims, the language and history of the 2002 enactment do not plainly indicate that the Legislature in fact revived lapsed claims to any extent beyond what it provided *expressly* in subdivision (c) of section 340.1. In a series of enactments the Legislature carefully enlarged the limitations period applicable to direct perpetrators of sexual abuse, specified to what extent the delayed discovery rule applied, used express language to indicate when actions that had expired during the running of the statute of limitations would be revived — even when the statute

---

[11] We also observe that if adult psychological injury were a separate injury giving rise to a cause of action accruing upon discovery of the connection between the adult injury and childhood abuse, presumably *Shirk* should have been litigated and resolved differently. (*Shirk*, *supra*, 42 Cal.4th 201.) There we pointed out that causes of action accrue for childhood sexual abuse *at the same time* for the purpose of claims against public entities under the government claims statute (see Gov. Code, § 911.2), and for the purpose of an ordinary civil action. (*Shirk*, *supra*, at p. 210.) The plaintiff in *Shirk* contended that her claim under the government claims statute was timely because she had only recently discovered that her adult psychological injury was caused by childhood sexual abuse by one of the defendant's employees. (*Id*. at p. 206.) We said that she could not take advantage of the revival period of section 340.1, subdivision (c) because it did not refer to claims made under the government claims statute. (*Shirk, supra*, at pp. 212-214.) But if the plaintiff's adult psychological injury were a separate injury giving rise to a new cause of action with its own accrual date, the plaintiff in *Shirk* would not have needed to rely upon the one-year revival period of subdivision (c) — her claim would not have accrued at all, whether as a civil action or under the government claims statute, until she became aware of her adult injury.

also contained a discovery rule — and adopted a limitations period that plainly barred the bringing of actions against third parties by persons who had reached the age of 26. When, in 2002, the Legislature made a narrow exception to the age 26 cutoff for a subcategory of third party defendants, it carefully specified what should happen to any claim that had lapsed when the plaintiff reached the age of 26; namely, such claims could be brought, but only during the one-year revival period. Under the circumstances, we do not find a legislative intent that the extension of subdivision (a) of section 340.1 to a subcategory of third party claims also was intended to revive lapsed claims.

### 4. *Common Law Delayed Discovery Principles*

The Court of Appeal also endorsed the idea that despite the language of section 340.1 as it existed after the 1998 amendment, with its decree that plaintiffs' claims against third parties had lapsed when they reached 26 years of age, plaintiffs nonetheless had claims that were *not subject to section 340.1* — that is, that they had claims subject solely to common law delayed discovery principles. We are not persuaded, however, that as a general matter, common law delayed discovery principles survive in parallel with the very specific and increasingly expansive discovery rules enacted as part of section 340.1.

As noted previously, the 1986 and 1990 versions of section 340.1 expressly permitted the application of common law delayed discovery principles. However, in 1994, the Legislature removed reference to common law delayed discovery principles from section 340.1.[12]

---

[12]    (See *ante,* at p. 20; compare former § 340.1, subd. (a), as amended by Stats. 1990, ch. 1578, § 1, p. 7550 with former § 340.1, as amended by Stats. 1994, ch. 288, § 1, p. 1930; see also Historical and Statutory Notes, 13C West's Ann. Code Civ. Proc., *supra*, foll. § 340.1, p. 173.)

We may infer that the Legislature intended to supplant common law delayed discovery principles when it deleted references to these principles. "As a general rule, in construing statutes, '[w]e presume the Legislature intends to change the meaning of a law when it alters the statutory language [citation], as for example when it deletes express provisions of the prior version [citation].' " (*People v. Mendoza* (2000) 23 Cal.4th 896, 916.) Thus we do not believe the Legislature intended that common law delayed discovery principles should apply to cases governed by section 340.1.

Further evidence of legislative intent to eliminate common law delayed discovery principles appeared in 1998, when the Legislature first enlarged the limitations period for claims against third party defendants, but imposed an absolute limit of age 26 for such claims while retaining a statutory discovery rule for actual perpetrators. The deletion of the former reference to common law delayed discovery principles, along with the addition of a strict age limit for some cases but a statutory discovery rule for others, indicates to us that the Legislature intended section 340.1, not common law delayed discovery principles, to govern the application of the statute of limitations to all late-discovered claims based upon childhood sexual abuse. (See *Moore*, *supra*, 112 Cal.App.4th at p. 382 ["An express legislative provision for circumstances which will toll a statute excludes, by necessary implication, all other exceptions. [Citation.] Accordingly, the outside limit of [the relevant statute of limitations] is not subject to delayed accrual or tolling except to the extent that the Legislature has expressly so provided"]; see also *Krupnick*, *supra*, 115 Cal.App.4th at pp. 1029-1030 [an express revival clause applicable to one class of plaintiffs shows that other exceptions to the general rule were not contemplated]; *Debbie Reynolds, supra,* 25

Cal.App.4th at p. 233 ["When 'a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others' "].)**13**

In any event, plaintiffs assert that their action is timely because they were not aware that their adult psychological injury was caused by childhood abuse. That theory was not accepted under the common law as a ground for application of the delayed discovery rule. (See *ante*, fn. 5.) Such an assertion is recognized solely by virtue of section 340.1.

5. *Legislative History and General Policy*

(a) *Legislative history of the 2002 amendment*

The Court of Appeal turned to the legislative history of the 2002 amendment in support of its analysis, and the dissenting opinions also have cited this record.**14** As we shall demonstrate, however, the relevant portions of these materials concern what the enactment of the bill would accomplish *prospectively*. Succeeding paragraphs, however, demonstrate that the Legislature was well aware

---

**13** The *David A.* court's reference to a possible surviving delayed discovery theory (*David A.*, *supra*, 20 Cal.App.4th at p. 288) is not to the contrary, because that decision predated the 1994 amendments deleting all reference to any nonstatutory delayed discovery principles.

**14** The legislative history consists primarily of (1) an analysis prepared for the Senate Judiciary Committee for its initial hearing on the bill proposing the amendments, conducted May 2, 2002 (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended May 2, 2002, for hearing on May 7, 2002; (2) an Assembly Committee on Judiciary bill analysis prepared for its hearing dated June 11, 2002, concerning the bill as amended June 6, 2002, with substantial material copied from the Senate analysis noted above. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, as amended June 6, 2002.) Subsequent analyses appear to repeat the first two items in substantial part. (See, e.g., Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1779, *supra*, as amended June 17, 2002; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 17, 2002.)

that the revival of lapsed claims was a separate matter that was governed by the language of section 340.1, subdivision (c) — indeed, that it was a separate matter requiring both a cautious balancing of policy and express language of revival.

The Court of Appeal cited the following evidence of legislative intent that appeared in an analysis submitted to the Senate Committee on the Judiciary: "This bill is essential to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from those responsible. While current law allows a lawsuit to be brought against the perpetrator within three years of discovery of the adulthood aftereffects of the childhood abuse, current law bars any action against a responsible third party entity . . . after the victim's 26th birthday. Unfortunately . . . for many victims their adulthood trauma does not manifest itself until well after their 26th birthday, when some event in their current life triggers remembrance of the past abuse and brings on new trauma. [¶] For example, a 35-year old man with a 13-year old son involved in many community and sporting events, may begin to relive his nightmare of being molested by an older authoritarian figure when he was 13 years old and about to enter puberty. While a lawsuit against the perpetrator is possible, that person may be dead, may have moved away to places unknown, or may be judgment-proof. However, any lawsuit against a responsible third party is absolutely time-barred after the victim passes this 26th birthday. This arbitrary limitation unfairly deprives a victim from seeking redress, and unfairly and unjustifiably protects responsible third parties from being held accountable for their actions that caused injury to victims."[15]

---

[15]    (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, as amended May 2, 2002; see also Assem. Com. on Judiciary, Background Information Worksheet on Sen. Bill No. 1779 (2001-2002 Reg. Sess.) June 5, 2002, bill dig., p. 1.)

This language explained why the proponents of the 2002 amendment felt the bill was necessary, but it is in a subsequent, separate four-page discussion that the analysis considers the problem of revival of lapsed claims (under the heading "Extending limitations period past age 26 and reviving time-barred actions for one-year-window period has precedent").[16] It is this second portion of the analysis that describes the one-year revival period contemplated by section 340.1, subdivision (c).

Indeed, the revival section of the analysis supports our conclusion, since it acknowledges the need for express language of revival, carefully describing the Legislature's authority to revive lapsed claims " 'by express legislative provision.' " Through the following language the legislative history strongly suggests an understanding that a person with a late-discovered claim would have only the one-year revival period in which to institute an action. According to the analysis prepared for the Senate Committee on the Judiciary: "In other words, this bill would provide those victims who *discovered their adulthood trauma after age 26*, whose action *has been barred* by the current statute of limitations, *a one-year window* to bring a case against a third party that otherwise would be time-barred." (Italics added.)[17]

The analysis also carefully weighs policy considerations respecting the bill's language of revival, balancing the defendant's interest in repose and the victim's interest in compensation. It acknowledges that limitations periods " 'are designed to promote justice by preventing surprises through the revival of claims

---

**16** (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, as amended May 2, 2002, p. 6.)

**17** (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, as amended May 2, 2002, p. 6.)

that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.  The theory is that even if one has a just claim it is unjust not to put the adversary on notice . . . within the period of limitations and the right to be free of stale claims in time comes to prevail over the right to prosecute them.' "[18]

The Court of Appeal cited additional language from the legislative materials:  " 'People who discover their adulthood trauma from the molestation after the effective date of the bill will have three years from the date the victim discovers or reasonably should have discovered that the adulthood trauma was caused by the childhood abuse.' "

As noted in the Court of Appeal's opinion, however, the quoted legislative statements appear under the heading " 'WHO CAN SUE AFTER THE BILL PASSES AND WHEN,' " under the subheading "*Prospective* application." (Italics added, underscoring omitted.)  However, under the same general heading, but under its *own* subheading, "*Retroactive* application and revival of lawsuits," the material recounts that "the bill would *create a one-year window for victims to bring a lawsuit that would otherwise be barred by the age 26 limitation.*"[19] Again, the report strongly supports rather than detracts from our conclusion.

Plaintiffs refer to materials in the legislative history stating that "[t]his bill would provide that the absolute age of 26 limitation in actions against a third party does not apply, and the broader 'within three years of discovery' statute of

---

[18]    (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, as amended May 2, 2002, p. 6.)

[19]    (Assem. Com. on Judiciary, Background Information Worksheet on Sen. Bill No. 1779, *supra*, June 5, 2002, bill dig., p. 0, italics added.)

51

limitations in subdivision (a) applies" to defendants falling within section 340.1, subdivision (b)(2).[20]

Again, however, the quoted language merely describes the *prospective* effect of the bill. The language is followed by a description of how a lapsed claim may be revived: "This bill would provide that, notwithstanding any other provision of law, any action for damages against a third party as provided above which is barred as of the effective date of this bill solely because the applicable statute of limitations has expired, is revived and a cause of action thereupon may be brought *if commenced within one year of the effective date of this bill*."[21] Thus the analysis once again identifies the language of section 340.1, subdivision (c) as covering the subject of revival of lapsed claims.

This history displays an evident understanding on the part of the Legislature that, prior to the 2002 amendment, all claims against third parties lapsed once the plaintiff reached the age of 26. These materials also indicate that the Legislature carefully considered what was to be the fate of lapsed claims and intended that new section 340.1, subdivision (c) should govern such claims. The Legislature was aware of settled law expounding the distinction between prospective application and retroactive application of expanded limitations periods. In sum, we disagree with plaintiffs that "[i]n light of the Committee's

---

**20** (See Sen. Rules Com., Analysis of Sen. Bill No. 1779, *supra*, as amended June 17, 2002, p. 3 [also appearing, among other places, in Sen. Rules Com., Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended May 15, 2002, pp. 3-4; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, p. 3].)

**21** (Sen. Rules Com., Off. Of Sen. Floor Analyses, Analysis of Sen. Bill No. 1779, *supra*, as amended June 17, 2002, p. 3, italics added [also appearing, among other places, in Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, as amended May 2, 2002, p. 3].)

description of the effect of [Senate Bill No.] 1779, it appears that the word 'prospective' was used to demarcate between individuals who had made the connection contemplated by section 340.1(a) as of the effective date of [Senate Bill No.] 1779, and those who had not; as opposed to dividing individuals who were over the age of 26 on January 1, 2003 from those who were younger."

*(b) General policy*

The Court of Appeal believed its interpretation best served the language and purpose of the enactment, adding that as a remedial statute, section 340.1 should be construed broadly to carry out its overall purpose. The appellate court referred to *Doe v. City of Los Angeles*, *supra*, 42 Cal.4th 531, in which we characterized section 340.1, subdivision (b)(2) as remedial, and stated that "the Legislature intended [it] to be construed broadly to effectuate the intent that illuminates section 340.1 as a whole; to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries." (*Doe v. City of Los Angeles*, *supra*, at p. 536.) We are urged to honor the salutary remedial purpose served by the expanding limitations period set out in section 340.1 and to give effect to an evident legislative intent — in the wake of public exposure of sexual abuse by priests against children that had been condoned and covered up by the Catholic Church for so many years — to call to account those persons and entities that committed or condoned such heinous offenses against children.

We acknowledge the important remedial purpose of section 340.1 and that the measure should be interpreted in a manner that will carry out its apparent intent. Reliance upon the general purpose of the enactment, however, does not alter the circumstance that the Legislature chose to deal with the problem of lapsed claims by offering a one-year window period reviving those claims. Moreover, the Legislature has not abolished the limitations period for childhood sexual abuse

53

claims, and even a liberal construction does not change the general rule that an enlarged limitations period does not apply to lapsed claims in the absence of express language indicating legislative intent to revive lapsed claims. (See *DiGenova*, *supra*, 57 Cal.2d at p. 174 [a rule of liberal construction does not require that a statute should be interpreted to apply retroactively]; *Davis v. Harris* (1998) 61 Cal.App.4th 507, 512 [rule of liberal construction of remedial statutes "does not mean that a court may read into the statute that which the Legislature has excluded, or read out that which it has included"]; *Gallo*, *supra*, 200 Cal.App.3d at p. 1383 [simply because the Legislature intended to afford additional protection to victims by lengthening the statute of limitations does not mean "the Legislature also intended to revive already expired causes. These are different matters"].)

Moreover, as we have seen, over the years the legislative expansion of the limitations period has been measured and deliberate, with due concern for affording adequate and reliable notice to potential defendants, and "promot[ing] justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" — demonstrating a recognition that "the right to be free of stale claims in time comes to prevail over the right to prosecute them."[22]

The dissenting justices posit that the Legislature could not reasonably have intended to supply only a one-year revival period for claims that were, after all, unknown to potential plaintiffs. But we have not been able to identify in the language of the statute an intent to do anything else. Moreover, it would not be

---

[22]    (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, as amended May 2, 2002, p. 62.)

54

unreasonable or anomalous to provide only a one-year revival period for hitherto undiscovered claims.  Although we are unreservedly sympathetic to the plight of persons who were subjected to childhood sexual abuse, we note that the preexisting limitations period, along with the one-year revival period created by the 2002 amendments, afforded victims a *very* considerable time following the abuse in which to come to maturity, or even middle age, and discover the claim.

As for the assertion that the purpose of the 2002 amendment of section 340.1 would be defeated if it were interpreted to apply prospectively to the subcategory of third party defendants identified by the 2002 amendment, we are not convinced.  A prospective application of the expanded period in which to bring claims against this subcategory of third party defendants certainly has an effect in that it deters negligence on the part of third parties in the future — the Legislature could reasonably believe such an application would encourage various entities, beginning on the effective date of the 2002 amendment, to ensure that they would always afford appropriate protection for their charges, in order to avoid the very open-ended risk that failure to protect a child could subject the entity to suit for an indefinite period.

That the Legislature has decided that from now on, third party defendants may be liable for a relatively indefinite period in the future — perhaps for a child victim's entire lifetime — does not mean that the Legislature must have intended the same extensive period of liability to apply to all third party malfeasance that occurred, for example, 60, 70, or more years in the past, without any limitation. The Legislature was aware that it was striking a balance between the strong interest of victims of abuse in redress of grievous injury and the burden on third party defendants — who may have discarded records in reliance on prior law and lost access to witnesses — of being required to defend stale claims.  We add that it is not unheard of for the Legislature to impose a strict limit even on undiscovered

but deserving claims (see §§ 337.15 [10-year limit on latent, i.e., undiscovered, construction defect claims], 340.5 [limitations period of three years from injury or one year from discovery for medical malpractice claims]; Pen. Code, § 803, subd (g) [for offenses committed prior to Jan. 1, 2002, a criminal complaint may be filed within one year of the date on which the identity of the suspect is established by DNA testing *if* the evidence was analyzed no later than Jan. 1, 2004].)

Plaintiffs also ask us to consider the public policy in favor of disposing of litigation on the merits rather than on procedural grounds that would result in the forfeiture of a plaintiff's rights. We acknowledge the policy in favor of disposing of claims on the merits but must also give weight to the equally strong policy in favor of affording repose — a policy also considered by the Legislature. (See *Adams v. Paul* (1995) 11 Cal.4th 583, 592 [" 'even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and . . . the right to be free of stale claims in time comes to prevail over the right to prosecute them' "]; *Krusesky v. Baugh* (1982) 138 Cal.App.3d 562, 566 ["The policy behind statutes of limitations is as meritorious as the policy of trying cases on their merits"].)[23]

---

[23] Plaintiffs' contention that they should be permitted to proceed against defendant upon a vicarious liability theory was not reached in the Court of Appeal and for that reason is not discussed here.

## III.  DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded to that court for further action consistent with this opinion.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.

**DISSENTING OPINION BY CORRIGAN, J.**

I respectfully dissent. The majority concludes that plaintiffs' claims had to be brought in 2003, even though they had not yet been discovered. It relies on the rule that an enlarged limitations period will not apply to lapsed claims unless the Legislature employs express language of revival. However, Code of Civil Procedure section 340.1, subdivision (c) *does* expressly revive lapsed claims, including plaintiffs'.[1] The question before us is not whether the Legislature intended a retroactive application of the 2002 amendments. Plainly, it did. The question is whether *all* revived claims are subject to the one-year window period specified in section 340.1(c). The majority holds that they are. I disagree.

In 2002, all child molestation claims against third party defendants were barred after a plaintiff reached the age of 26. (Former § 340.1, subd. (b), as amended by Stats. 1998, ch. 1032, § 1, p. 7785.) The age 26 limitation is still the general rule. However, in the amendments now before us, effective January 1, 2003, the Legislature extended the limitations period by creating an exception to the age-26 cutoff for claims against some third parties. (§ 340.1, subd. (b)(2), added by Stats. 2002, ch. 149, § 1, pp. 752-753.) Plaintiffs over the age of 26 now have three years from the date they discover an adult psychological injury to bring

---

[1] Further statutory references are to the Code of Civil Procedure. Hereafter, I refer to section 340.1, subdivision (c) as section 340.1(c).

1

suit against a limited class of third party defendants:  those who knew or should have known about child molestation by an employee or agent and failed to take remedial action.  (§ 340.1, subds. (a) & (b)(2).)**2**

The 2002 Legislature also revived lapsed claims, providing in section 340.1(c):  "any claim . . . that is permitted to be filed pursuant to paragraph (2) of subdivision (b) that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, in that case, a cause of action may be commenced within one year of January 1, 2003."  The claims revived by section 340.1(c) are those held by plaintiffs who reached the age of 26 before January 1, 2003.  These claims "would otherwise be barred as of January 1, 2003."  (§ 340.1(c).)  Although the Legislature provided a one-year window period for bringing suit, section 340.1(c) also included a savings clause:  "Nothing in this subdivision shall be construed to alter the applicable statute of limitations period of an action that *is not time barred as of January 1, 2003*."  (Italics added.)

In my view, plaintiffs' claims are exempted from the window period by the savings clause.  As of January 1, 2003, they were not time-barred; "the applicable statute of limitations period" at that point was three years from the date of discovery.  (§ 340.1(c).)  The clause imposing a one-year window period "shall [not] be construed to alter" that limitations period.  (*Ibid*.)  The claims that *were* time-barred as of January 1, 2003, and therefore subject to the window period,

---

**2**      Due to the exception provided in section 340.1, subdivision (b)(2), the limitations period provided in section 340.1, subdivision (a) applies to claims by plaintiffs over the age of 26 against the designated class of third party defendants:  "within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse."

2

were those *already discovered* by plaintiffs over the age of 26. "[T]he applicable statute of limitations" for these claims was the one in effect at the time of discovery, and they were revived only for the window period. (*Ibid*.) Later-discovered claims, however, are "not time barred as of January 1, 2003" and the window period does not alter the limitations period in effect when they are discovered. (*Ibid*.) The majority suggests this analysis attributes a revival effect to section 340.1, subdivision (a). (Maj. opn., *ante*, at p. 31.) It does not. The first sentence of section 340.1(c) expressly revives plaintiffs' claims, and the second sentence takes them out of the window period.

The majority reasons that the first and second sentences of section 340.1(c) use the same terms, and therefore must address the same category of claims. (Maj. opn., *ante*, at p. 32.) However, the Legislature actually employed significantly different phrasing in the revival and savings clauses of section 340.1(c). All lapsed claims are covered by the revival clause, because they "*would otherwise* be barred" as of that date. (§ 340.1(c), italics added.) That is, but for the 2002 amendments, they would have been barred. However, in the savings clause the Legislature did not refer to claims "otherwise barred," or claims that would have been barred under former law.[3] Instead, it preserved claims "not time barred as

---

**3** In this respect, the 2002 Legislature departed from its past practice in framing revival provisions for section 340.1(c). In 1986, 1994, and 1999, it spoke only in terms of claims that would have been barred by the previously existing statutes of limitation. (See former § 340.1, subd. (e), added by Stats. 1986, ch. 914, § 1, p. 3166 [reviving *"any action which would be barred by application of the period of limitation applicable prior to January 1, 1987"* (italics added)]; former § 340.1, subd. (o), added by Stats. 1994, ch. 288, § 1, p. 1930, now § 340.1, subd. (r) [reviving *"any action otherwise barred by the period of limitations in effect prior to January 1, 1991"* (italics added)]; former § 340.1, subd. (s), added by Stats. 1999, ch. 120, § 1, pp. 1738-1739, now § 340.1, subd.

*(footnote continued on next page)*

3

of" the effective date of the new limitations period, thereby allowing claims accruing on or after that date to be brought under the new limitations scheme. (§ 340.1(c).)

Thus, plaintiffs' claims are timely under the terms of section 340.1 and the ordinary rules of accrual. The discovery rule provides that a cause of action accrues, and the statute of limitations is triggered, when the plaintiff "has, or should have, inquiry notice of the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) The Legislature was familiar with the application of the discovery rule in this context, from its experience with earlier amendments discussed in *David A. v. Superior Court* (1993) 20 Cal.App.4th 281 (*David A.*). The *David A.* plaintiff tried to revive her lapsed claim under a provision stating only that the 1990 amendments applied to "any action commenced on or after January 1, 1991." (Former § 340.1, subd. (k), added by Stats. 1990, ch. 1578, § 1, p. 7552; see *David A.*, at p. 286.) The court rejected the attempt, observing that the legislative history showed the Legislature had not meant to revive lapsed claims, and that the "oblique" statutory language could not be construed to revive lapsed claims without contravening the rule of construction requiring express language of revival. (*David A.*, at pp. 286-288.)[4]

---

*(footnote continued from previous page)*

(u) [reviving "*any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999*" (italics added)].)

    The majority reads section 340.1(c) as if it continued the pattern of the earlier revival clauses, treating all lapsed claims alike. But because the Legislature used different terms in 2002, it is reasonable to conclude that it intended a different result.

[4]    The Legislature promptly responded to *David A.* by amending section 340.1 to make it plain that "The amendments to this section enacted at the 1990 portion of the 1989-90 Regular Session [i.e., the amendments at issue in *David A.*] shall apply to any action commenced on or after January 1, 1991, including any action

*(footnote continued on next page)*

4

However, the *David A.* court went on to state that its holding *would not apply to a claim subject to postponed accrual*, and to note that the pleadings before it were insufficient to support a claim of delayed discovery. (*David A.*, *supra*, 20 Cal.App.4th at p. 288.) Accordingly, in 2002 the Legislature had every reason to believe that, as in *David A.*, future claims subject to postponed accrual would be governed by the limitations period in effect at the time of discovery. By expressly reviving lapsed claims, and limiting the one-year window period to claims that were time-barred as of January 1, 2003, the Legislature allowed the discovery rule to operate in its normal fashion on all revived claims.

Nevertheless, the majority concludes that the one-year window specified in section 340.1(c) applies to all revived claims, whether or not they were discovered in time for the plaintiff to sue. I find this reading problematic; it would make little sense for the Legislature to revive and then foreclose claims that could not be pursued because the plaintiffs were unaware of their injuries.

The majority's construction leads to anomalous results. All plaintiffs younger than 26 on January 1, 2003, are free to sue within three years of the date they discover their injuries, even if they make that discovery at an advanced age. Plaintiffs over the age of 26 who had discovered their injuries before January 1,

---

*(footnote continued from previous page)*

otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired under the law existing prior to January 1, 1991." (Former § 340.1, subd. (o), added by Stats. 1994, ch. 288, § 1, p. 1930, now § 340.1, subd. (r).)

In my view, the majority's reading of section 340.1(c) invites a similar repudiation by the Legislature. (See 3 Witkin, Cal. Procedure (3d ed. 2008) Actions, § 464, p. 587.) For these plaintiffs, however, that would be cold comfort, as their claims will have been finally resolved. (See § 340.1, subd. (d); *Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 188.)

5

2003, were permitted to sue within the one-year window created by section 340.1(c), no matter how long ago they were molested. Thus, a plaintiff molested in 1960 at the age of 12, who discovered his or her injury in 2002 at the age of 54, would be able to sue during the window period. Under the majority's reading, however, section 340.1(c) bars suit by a plaintiff molested in 1988 at the age of 12, who discovered his or her injury in 2004 at the age of 28. This claim is more recent and the injury was discovered at an earlier age than the hypothetical claim based on a 1960 molestation. Nevertheless, under the majority's holding the older claim would be viable and the younger claim barred. It seems unlikely that the Legislature would single out one class of plaintiffs for arbitrary treatment, depriving them of any opportunity to sue upon discovery of their injuries while allowing other plaintiffs who suffer the same kind of injury a reasonable time after discovery to seek redress.

The majority invokes the rule requiring express revival of lapsed claims, which developed from the concern that extending a limitations period to expired claims deprives defendants of their interest in repose. (*Douglas Aircraft Co. v. Cranston* (1962) 58 Cal.2d 462, 465-466.) Because of the disruptive impacts of such extensions, we will not apply a newly enlarged limitations period to claims that had lapsed under the former statute unless the Legislature "expresse[s] itself in unmistakable terms." (*Id.* at p. 466.) Ordinarily, the question before the court is whether the Legislature intended the amended period to apply retroactively to *any* lapsed claims. That was the case in *Douglas Aircraft Co.*, *supra*, 58 Cal.2d at page 466, in *David A.*, *supra*, 20 Cal.App.4th at page 287, and in the cases cited

6

by the majority for the general rule, with one exception that is unlike the case before us.**5**

However, in section 340.1(c) the Legislature *did* revive lapsed claims, in unmistakable terms. Whether it then subjected all those claims to a limited one-year window period is a separate question. In answering that question, we should keep in mind that section 340.1(c), like section 340.1, subdivision (b)(2), "is a remedial statute that the Legislature intended to be construed broadly to effectuate the intent that illuminates section 340.1 as a whole; to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 536.)

The majority's reading of section 340.1(c) contravenes the remedial purpose of the 2002 amendments. It is not a grammatically unreasonable reading, but its effects are manifestly unreasonable. The alternative reading set out here is consistent with the language of the statute and does not lead to anomalous results. Insofar as the terms of section 340.1(c) are ambiguous, we may consult the legislative history to clarify their meaning. (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 211.)

As the majority observes, the legislative history shows that the savings clause of section 340.1(c) was borrowed from another revival statute, enacted in

---

**5** In *Krupnick v. Duke Energy Morro Bay* (2004) 115 Cal.App.4th 1026, the Legislature specified that victims of the 9/11 terrorist attacks were entitled to retroactive application of an expanded limitations period for personal injury actions. The plaintiff was not a member of that class, and did not try to bring himself with the scope of the express revival provisions. (*Id*. at pp. 1028-1029.) Here, on the other hand, plaintiffs' claims were expressly revived.

7

2000.[6] Section 340.9 revived certain lapsed insurance claims arising from the 1995 Northridge earthquake, and included the following caveat: "Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section." (§ 340.9, subd. (c).) In *Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89 (*Cordova*), the court held that this language preserved claims shielded from the statute of limitations by the doctrine of equitable estoppel. (*Id.* at pp. 98-100.)

The majority reasons that the parallel terms of section 340.1(c) must have the same meaning. The 2002 Legislature did not, of course, have the benefit of the *Cordova* decision when it adapted the terms of section 340.9, subdivision (c) for use in the savings clause before us. However, I agree with the majority that a claim subject to equitable estoppel or any other tolling mechanism would be preserved under section 340.1(c). But it does not follow that this is the *only* function of the savings clause: "Nothing in this subdivision shall be construed to alter the applicable statute of limitations period of an action that is not time barred as of January 1, 2003." (§ 340.1(c).) As discussed above, this language is fairly read to mean that the one-year window period does not apply to plaintiffs over the age of 26 who discover their injuries on or after January 1, 2003. "*[A]s of*" that date, their claims are not barred by "the applicable statute of limitations period," which is the three-year period provided in section 340.1, subdivision (a). (§ 340.1(c), italics added.)

---

**6** Senate Committee on the Judiciary, third reading Analysis of Senate Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 17, 2002, page 4; Assembly Committee on Judiciary, Analysis of Senate Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 6, 2002, page 7.

The bill history of the 2002 amendments does not suggest the Legislature meant to restrict the savings clause of section 340.1(c) to tolled claims. In *Cordova*, the court consulted the legislative history of section 340.9 and found it replete with indications that the statute was enacted in response to reports of rampant mishandling of claims by insurers, of the sort that would support application of the equitable estoppel doctrine. (*Cordova*, *supra*, 129 Cal.App.4th at pp. 102-107.) There is little in the legislative history of section 340.1(c) to suggest a similar concern. There is much, however, that demonstrates the Legislature's focus on the injustice of denying relief to adult survivors of childhood sexual abuse who discover their psychological injuries after the statute of limitations has run.

The history shows that the Legislature was motivated by concern that "any lawsuit against a responsible third party is absolutely time-barred after the victim passes his 26th birthday. This arbitrary limitation unfairly deprives a victim from seeking redress, and unfairly and unjustifiably protects responsible third parties from being held accountable for their actions that caused injury to victims."[7] As explained in a bill analysis, the 2002 amendments "would provide those victims who *discovered their adulthood trauma after age 26*, whose action *has been barred* by the current statute of limitations, *a one-year window* to bring a case against a third party that otherwise would be time-barred."[8] (Italics added.)

---

[7] Senate Committee on the Judiciary, Analysis of Senate Bill No. 1779, *supra*, as amended June 17, 2002, pages 3-4 (included in Assem. Floor Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 17, 2002, pp. 3-4); see also Assembly Committee on Judiciary, Background Information Worksheet on Senate Bill No. 1779 (2001-2002 Reg. Sess.) June 5, 2002, bill digest, page 1.
[8] Senate Committee on the Judiciary, Analysis of Senate Bill No. 1779 (2001-2002 Reg. Sess.) as amended May 2, 2002, for hearing on May 7, 2002, page 6.

The majority reads this language to include all 26-year-old plaintiffs, both those who *have* discovered and those who *will* discover their injuries. (Maj. opn., *ante*, at pp. 49-50.) However, the bill analysis uses the past tense to describe injuries that have been *discovered*. It cannot fairly be read to include victims who would later discover their trauma, after the one-year window period had expired. The majority's reading of section 340.1(c) does not give such victims a one-year window, as the Legislature contemplated. They could not sue before their injuries were discovered. Under the majority's analysis, the Legislature revived their claims for nought. Upon discovery, they are subject to the absolute time-bar that the Legislature meant to lift.

The majority acknowledges materials stating: "People who discover their adulthood trauma from the molestation after the effective date of the bill will have three years from the date the victim discovers or reasonably should have discovered that the adulthood trauma was caused by the childhood abuse."[9] This plain language demonstrates the Legislature's understanding that the discovery rule provided in section 340.1, subdivision (a) would apply to claims arising after January 1, 2003. If the Legislature had meant to say that "people *who turn 26 on or after the effective date of the bill* will have three years" from the date of discovery to sue, surely it would have stated that important qualification, either here, elsewhere in the documentation of the bill history, or indeed in the statute itself. It did not. The absence of any such qualification strongly supports the conclusion that when the Legislature specified in section 340.1(c) that nothing in the revival clause should be "construed to alter the applicable statute of limitations period of an action that is not time barred as of January 1, 2003," it meant that

---

[9] Assembly Committee on Judiciary, Background Information Worksheet on Senate Bill No. 1779, *supra*, bill digest, page 0.

anyone discovering a claim after 2002 would have three years to sue. (Cf. *Cordova*, *supra*, 129 Cal.App.4th at p. 106 [noting absence in legislative history of any indication that Legislature intended to exclude equitable remedies].)

The majority deflects the import of this passage in the legislative history by observing that it appears under the subheading "Prospective application." The majority notes that the same materials, under the heading "Retroactive application and revival of lawsuits," state that "the bill would create a one-year window for victims to bring a lawsuit that would otherwise be barred by the age 26 limitation." (Maj. opn., at pp. 51-52.) The majority does not quote the next sentence, however: "This is fair because the statute should not protect those responsible from being held liable."[10] The majority's reading of section 340.1(c) *does* protect responsible third party defendants, and arbitrarily maintains the age 26 limitation for one class of plaintiffs.[11]

In any event, the majority's distinction between prospective and retroactive application of the new limitations period does not undermine the viability of plaintiffs' claims. While in one sense any application of a new statute of limitations to a lapsed claim is "retroactive," the discovery rule makes it possible

---

[10] Assembly Committee on Judiciary, Background Information Worksheet on Senate Bill No. 1779, *supra*, bill digest, page 0.
[11] The majority's interpretation also creates an arbitrary limitation in the operation of the one-year window period. A discovery late in the 2003 calendar year would be difficult to bring to the attention of an attorney in time to file suit. While this is a normal aspect of statutes of limitation, section 340.1 is notable for its generous limitation periods, allowing suit within eight years of the age of 18 or three years of the date of discovery, whichever is later. (§ 340.1, subd. (a).) A one-year window period for lapsed claims operates sensibly for claims discovered before the window opens, but becomes increasingly impractical as the window period passes.

11

for a new limitations period to govern revived claims that accrue after the effective date of the new statute. It was entirely reasonable for the Legislature to anticipate that the 2002 amendments would apply *prospectively* as of January 1, 2003, to claims accruing on or after that date, and *retroactively* to claims discovered before that date.

Accordingly, I would affirm the Court of Appeal's judgment. Plaintiffs' claims were unquestionably revived by section 340.1(c). To hold that they were alive only for the calendar year 2003, even though they had not been discovered, is inconsistent with the broadly remedial intent underlying the 2002 amendments. It leaves one class of plaintiffs without a remedy, while allowing similarly situated plaintiffs to sue. The statutory language does not compel this unfair and anomalous result. The savings clause in section 340.1(c) may reasonably be read to include plaintiffs' claims in the expanded scope of the new limitations period in effect as of January 1, 2003.

**CORRIGAN, J.**

12

**DISSENTING OPINION BY LIU, J.**

In this case, six brothers seek compensatory relief from the Roman Catholic Bishop of Oakland for adult psychological injuries allegedly caused by childhood sexual abuse perpetrated by a priest assigned to their local parish. In their amended complaint, plaintiffs provide a disturbing and detailed account of recurring abuse by the same priest, and equally disturbing allegations of institutional avoidance and inattention. Whether those allegations are true, we will never know, as the Quarry brothers are now barred from having their day in court. Because the statute on which plaintiffs rely is a remedial statute that, properly construed, authorizes them to bring this suit, I respectfully dissent.

I agree with my dissenting colleague Justice Corrigan that Code of Civil Procedure section 340.1, subdivision (c) (all further undesignated statutory references are to this code) allowed a one-year window for alleged victims of childhood sexual abuse to sue especially culpable third parties on previously discovered claims that had lapsed, while leaving undiscovered claims against those third parties subject to the delayed discovery rule of section 340.1, subdivision (a). Assuming plaintiffs' claims lapsed no later than 1998 by virtue of the age 26 cutoff in section 340.1, subdivision (b)(1), I believe Justice Corrigan's reading of section 340.1, subdivision (c) is sound: The first sentence of that provision revived plaintiffs' claims and says revived claims must be brought "within one year of January 1, 2003." But the second sentence of that provision preserves "the applicable statute of limitations period of an action that is not time

1

barred as of January 1, 2003." Plaintiffs' claims were "not time barred as of January 1, 2003" because they had been revived as of that date, and "the applicable statute of limitations period" for their revived claims is the delayed discovery rule of section 340.1, subdivision (a).

I write separately, however, because I am doubtful of the premise that the Legislature's 1998 enactment of the age 26 cutoff caused plaintiffs' undiscovered claims to lapse. It is true that *if* plaintiffs had discovered the causal connection between their alleged childhood abuse and their adult psychological injuries at any point from 1999 through 2002, then the age 26 cutoff *would have* barred their claims. But it is well established that "statutes of limitation do not begin to run until a cause of action accrues." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*), citing *Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 487.) The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 806, citing *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397, and *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187.) That a cause of action *would have been barred* by the applicable statute of limitations (the age 26 cutoff) had it accrued in 1999 does not mean that it *was actually barred* by that limitations period where the cause of action did not accrue until 2006. By that time, section 340.1, subdivision (b)(2) had eliminated the age 26 cutoff and put into effect a new limitations period (the three-year discovery rule) for certain third party claims. (See, e.g., *Romo v. Estate of Bennett* (1979) 97 Cal.App.3d 304, 307-308 [where Legislature extends a statute of limitations, the new limitations period applies to causes of action that accrue after its effective date].)

The court says that if plaintiffs' claims are understood to accrue upon discovery of the connection between adult psychological injury and childhood

abuse, then *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201 (*Shirk*) "presumably . . . should have been litigated and resolved differently." (Maj. opn., *ante*, at p. 45, fn. 11.) But that is entirely speculative. The plaintiff in *Shirk* conceded that "her cause of action . . . was extinguished in 1980" due to her failure to timely present her claim to the school district as required by the government claims statute. (*Id.* at p. 210.) She chose to argue before this court that section 340.1, subdivision (c) revived her cause of action. (*Shirk*, *supra*, at p. 210.) This court disagreed and held that the revival provision did not apply. (*Id.* at pp. 212-214.) Neither the majority nor the dissent in *Shirk* examined whether subdivision (b)(2) gave rise to a new accrual or whether the age 26 cutoff in subdivision (b)(1) caused any undiscovered claims to lapse in 1998. Those issues simply were not raised or considered in *Shirk*. "It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court." (*People v. Harris* (1989) 47 Cal.3d 1047, 1071.)

When the Legislature enacted the 2002 amendment adding subdivision (c) to section 340.1, the Senate Committee on the Judiciary explained that "this bill would provide those victims who *discovered* their adulthood trauma after age 26, whose action *has been barred* by the current statute of limitations, a one-year window to bring a case against a third party that otherwise would be time-barred." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended May 2, 2002, p. 7, italics added.) This legislative history makes clear that subdivision (c) revived *discovered* claims that *had been barred* by the age 26 cutoff. By contrast, the legislative history nowhere mentions revival of *undiscovered* claims. The most sensible explanation for this omission is that the Legislature did not see any need to revive undiscovered claims because those claims had not accrued and thus had not been barred. Subdivision (b)(2), which was also added to section 340.1 as part of the 2002 amendment, brought such

3

claims against especially culpable third parties within the coverage of subdivision (a)'s three-year discovery rule.

This reading is further confirmed by the author of the 2002 amendment, who explained the amendment's purpose as follows: "[T]his bill is essential to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from those responsible. While current law allows a lawsuit to be brought against the perpetrator within three years of discovery of the adulthood aftereffects of the childhood abuse, current law bars any action against a responsible third party entity . . . after the victim's 26th birthday. Unfortunately . . . for many victims their adulthood trauma does not manifest itself until well after their 26th birthday, when some event in their current life triggers remembrance of the past abuse and brings on new trauma.

"For example, a 35-year old man with a 13-year old son involved in many community and sporting events, may begin to relive his nightmare of being molested by an older authoritarian figure when he was 13 years old and about to enter puberty. While a lawsuit against the perpetrator is possible, that person may be dead, may have moved away to places unknown, or may be judgment-proof. However, any lawsuit against a responsible third party is absolutely time-barred after the victim passes his 26th birthday. [¶] This arbitrary limitation unfairly deprives a victim from seeking redress, and unfairly and unjustifiably protects responsible third parties from being held accountable for their actions that caused injury to victims." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779, *supra*, pp. 3-4.) The example of the 35-year-old man who connects his adult psychological injury to childhood sexual abuse is repeated several times throughout the legislative history of the 2002 amendments. (See also Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended Jun. 17, 2002, pp. 3-4; Sen. Rules Com., off of Sen. Floor Analyses,

4

Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended May 15, 2002; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 6, 2002, p. 3.)

Under today's decision, the 35-year-old man in the example may benefit from the three-year discovery rule — but only if he turned 35 at least *nine years after January 1, 2003*, the effective date of the 2002 amendments.  Anyone who turned 35 within nine years of January 1, 2003 would have been 26 or older as of January 1, 2003, and the claims of those individuals are forever barred, the court holds, unless they happened to be discovered and brought within the one-year revival window.  I find it hard to believe that this is what the Legislature intended. Given the repeated emphasis on the unfairness and arbitrariness of denying the three-year discovery rule to a 35-year-old victim of childhood sexual abuse, why would the Legislature have deferred *for nine years* the applicability of the discovery rule to any such 35 year old?  Absent some indication to the contrary in the statute or legislative history, I would not attribute to the Legislature such an anomalous intent.  (See also dis. opn. of Corrigan, J., *ante*, at pp. 5-6 [describing other anomalous and arbitrary results of the court's holding].)

The unanimous Court of Appeal was correct in its clear, straightforward reading of the statutory text:  "The parties do not dispute that plaintiffs' claims for injuries from the alleged sexual abuse originally lapsed between 1976 and 1982, when each turned age 19 . . . .  [¶] . . . [¶] The 1998/1999 amendments to section 340.1 revived all previously lapsed, unadjudicated claims against perpetrators and third parties, and provided for two alternative limitations periods:  A claim must be filed (1) within eight years after [a victim] reach[es] majority or (2) within three years of discovering that the cause of the psychological injury occurring after the age of majority was the childhood abuse, whichever occurs later ([§ 340.1], subd. (a)); as against third parties, however, the outside limit was age 26 (*id.*, subd. (b)).

5

Thus, under the prior law, any person discovering after age 26 that childhood abuse was the cause of his or her adulthood injuries was barred from suing responsible third parties. Effective 2003, however, the Legislature deleted the age 26 cutoff as against a narrow category of third party defendants who had both the knowledge and the ability to protect against abusive behavior but failed to do so. Anyone discovering that childhood abuse was the cause of their injuries after 2003 could sue these — more culpable — defendants without regard to the age 26 cutoff. (*Ibid.*) And, for those who had previously discovered the cause of their injuries but could not sue under the prior law because of the age 26 cutoff (*id.*, subd. (b)(1)), the Legislature offered a one-year window in which they could file their claims (*id.*, subd. (c)). [¶] It therefore follows, and we hold, that under section 340.1 the complaint in this action is not time-barred because plaintiffs have alleged they did not discover the cause of their psychological injuries until 2006."

The Court of Appeal also correctly explained the legislative history and intent: "[T]he primary purpose of the 2002 amendments was to ameliorate the harsh result of a statute of limitations which precluded abuse victims from recovering any compensation from the most highly culpable of the responsible third parties — those who knew of the danger and took no steps to protect children from abuse. It would not effectuate this legislative intent to read the amendments as reimposing the same harsh result on an entire class of victims over the age of 26 who did not discover the cause of their injury until after January 1, 2004, and therefore could not have filed their actions during 2003."

Finally, as mentioned at the outset, even if the Court of Appeal was wrong and the age 26 cutoff had barred plaintiffs' claims in 1998, Justice Corrigan is correct that the first sentence of section 340.1, subdivision (c) revived plaintiffs' claims and that "the applicable statute of limitations period" under the second

6

sentence of subdivision (c) is the three-year discovery rule, not the one-year revival window.

Today's decision does not comport with our understanding that section 340.1, subdivision (b)(2), which lifted the age 26 cutoff for claims against highly culpable third parties, "is a remedial statute that the Legislature intended to be construed broadly to effectuate the intent that illuminates section 340.1 as a whole; to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 536.) Although the 2002 amendments to section 340.1 are readily construed to protect plaintiffs such as the Quarry brothers — on either my interpretation or Justice Corrigan's — the court holds that it is too late for them to pursue their claims.

It is not too late, however, for the Legislature to give similarly situated plaintiffs their day in court. Since 1986, when section 340.1 was first enacted, the Legislature has twice expanded access to court for childhood sexual abuse victims in response to what it saw as unduly narrow rules set forth in judicial opinions. (See maj. opn., *ante*, at p. 17 [noting that 1990 amendment extended delayed discovery principles, superseding *DeRose v. Carswell* (1987) 196 Cal.App.3d 1011]; *id.* at p. 19 [noting that 1994 amendment expressly revived lapsed claims against direct perpetrators, superseding *David A. v. Superior Court* (1993) 20 Cal.App.4th 281].) Today's unduly narrow reading of the statute may prompt the Legislature again to provide a correction that affirms the statute's remedial purpose.

I respectfully dissent.

LIU, J.

7

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Quarry v. Doe 1

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 170 Cal.App.4th 1574
**Rehearing Granted**

_____

**Opinion No.** S171382
**Date Filed:** March 29, 2012

_____

**Court:** Superior
**County:** Alameda
**Judge:** Kenneth Mark Burr

_____

**Counsel:**

Zalkin & Zimmer, The Zalkin Law Firm, Irwin M. Zalkin, Michael H. Zimmer, Devin M. Storey and Michael J. Kinslow for Plaintiffs and Appellants.

Jeff Anderson & Associates, Michael Finnegan and Sarah Odegaard for The National Association for the Prevention of Sexual Abuse of Children, the National Center for Victims of Crime and the Survivors Network of those Abused by Priests as Amici Curiae on behalf of Plaintiffs and Appellants.

Nancy O'Malley, District Attorney (Alameda); Furtado, Jaspovice & Simons, Bill Lockyer and Richard J. Simons as Amici Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, Margaret M. Grignon; Foley & Lardner, Stephen A. McFeely, Tami S. Smason, Courtney R. Henning, Leila Nourani and Michael B. McCollum for Defendant and Respondent.

Lombardi, Loper & Conant, Peter O. Glaessner and Lori A. Sebransky for The Ordinary Mutual as Amicus Curiae on behalf of Defendant and Respondent.

Quinn Emanuel Urquhart Oliver & Hedges, Daniel H. Bromberg; Burke, Warren, MacKay & Serritella, James C. Geoly and Nora Flaherty Couri for The Order of Carmelites, Province of the Most Pure Heart of Mary, The Order of the Friar Servants of Mary, USA Province and The Greek Orthodox Archdiocese of America as Amici Curiae on behalf of Defendant and Respondent.

Hennigan, Bennett & Dorman, J. Michael Hennigan and Lee W. Potts for the Roman Catholic Archbishop of Los Angeles as Amicus Curiae on behalf of Defendant and Respondent.

Sweeney & Greene, James F. Sweeney, Stephen J. Greene, Jr., and Laura Borden Riddell for California Association of Private School Organizations as Amicus Curiae on behalf of Defendant and Respondent.

Sedgwick, Detert, Moran & Arnold and Nicholas W. Heldt for Boy Scouts of America and Masonic Homes of California, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Neumiller & Beardslee, Paul N. Balestracci, Lisa Blanco Jimenez; McNamara Law Firm and Gary A. Watt for the Roman Catholic Bishop of Stockton and the Roman Catholic Bishop of Sacramento as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Devin M. Storey
The Zalkin Law Firm
12555 High Bluff Drive, Suite 260
San Diego, CA  92130
(858) 259-3011

Irwin M. Zalkin
The Zalkin Law Firm
The Zalkin Law Firm
12555 High Bluff Drive, Suite 260
San Diego, CA  92130
(858) 259-3011

Margaret M. Grignon
Reed Smith
355 S. Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
(213) 457-8000